BANK OF HOLLY SPRINGS v. SINA D. PINSON.

1. BANK. *Lien on stock for debt of holder. Transfer of stock. Innocent purchaser.*

The third section of the charter of the Bank of Holly Springs provided for a directory and a president, and they were empowered to make "all needful rules and by-laws for the management of the business of said company, and the *mode and manner* of transferring its stock." Under this provision the corporation enacted a by-law that "the stock of the company shall be assignable only on the books of the company, and no transfer of stock shall be made by any stockholder who shall be indebted to the company; and certificates of stock shall contain upon them notice of this provision." Certificates of stock

in the corporation were issued to C., duly authenticated, and reciting the number of shares to which he was entitled, their nominal value, and that they were "transferable at the office, in person or by attorney." C. borrowed money from P. upon these certificates as collateral security, and assigned them to her by indorsement on each as follows: "For value received, I assign this certificate of stock to P., and authorize her as my attorney to demand and have transfer of the same made to her on the books of the company." When P. presented the certificates and demanded a transfer thereof on the books of the company it was refused, and she brought an action to recover damages for such refusal. The bank defended on the ground that C. was indebted to it in an amount exceeding the value of his stock, and that, under the by-law above quoted, it had a lien upon his stock for his indebtedness, and that he could not transfer his stock. At the time of the assignment P. had no actual notice of the lien claimed by the bank on C.'s stock. *Held,* that P. did not have constructive notice by the charter that there would be any by-law preventing a stockholder indebted to the bank from disposing of his stock, but only that there would be some regulation of the *mode and manner* of the transfer, and she had the right to presume that such regulation was announced in the certificate in the words, "transferable at the office, in person or by attorney," and was not bound to inquire any further. And P., being an innocent purchaser for value, without notice, actual or constructive, of the bank's lien on the stock, if it had any, is not, to the extent of her loan, affected thereby.

2. SAME. *Transfer of stock. Lien thereon. How waived. Violation of by-law.*

The by-law under which the lien is claimed by the bank, in the case above stated, directed that notice of the lien should be given in the certificate of stock; and this provision of the by-law must be regarded as meaning that the lien provided for should not be asserted against a person not having notice by the certificate. And the issuance of certificates not containing this notice was a waiver of the lien contemplated by the by-law.

3. SAME. *Bg-law requiring notice of lien. Repeal by violation.*

Under the charter above referred to, the directory had the power to make by-laws; and, it having been the uniform course of the bank to issue certificates of stock which did not contain the notice required by the by-law providing for a lien on the stock, such uniform conduct must be regarded, as to all not members of the corporation, as making a by-law repealing that providing for the lien.

4. SAME. *By-laws not in writing. How adopted.*

The by-laws of a corporation need not be in writing, but may be adopted as well by the company's conduct and the acts and conduct of its officers as by an express vote or an adoption in a meeting.

ERROR to the Circuit Court of Marshall County.

Hon. J. W. C. WATSON, Judge.

This is an action of *assumpsit* brought by Sina D. Pinson

against the "Holly Springs Savings and Insurance Company," whose name was changed, pending the litigation, to the "Bank of Holly Springs." The object of the suit was to recover damages for the refusal of the bank to transfer on its books certain certificates of stock which had been assigned to the plaintiff by B. S. and William Crump. The bank defended the action on the ground that the Crumps were indebted to it in an amount exceeding the value of their stock, and that, under a by-law of the corporation, the bank had a lien upon the stock assigned, for their indebtedness, and they were prohibited from transferring their stock in such circumstances. A supplemental statement of the case will be found in the opinion of the court.

*Featherston & Harris*, for the plaintiff in error.

If Mrs. Pinson was entitled to recover at all, she could only recover the amount of her debt against B. S. and William Crump in this action against the bank. The bank-stock of B. S. and William Crump was transferred to her, not absolutely, but as a collateral, to secure the payment of the six-thousand-dollar note which she held against them. She was entitled to make her debt out of the collaterals, but nothing more. But the jury returned a verdict in her favor for $8,200. Her debt was about $6,600, and the verdict is for at least $1,600 more than the principal and interest of her debt.

1. The question which is decisive of this case is, Did the bank have a valid lien on the stock of B. S. and William Crump as against Mrs. Pinson?

Were the charter and by-laws of the bank notice to Mrs. Pinson; was she bound to take notice of them, and learn their provisions before she negotiated with the Crumps for their certificates of stock? If she was, then it is manifest that she acquired no rights by the transfer of the certificates, and acted with full knowledge in her own wrong. We insist that she was bound to take notice both of the charter and by-laws before negotiating with the Crumps for the stock-certificates, and if this proposition be established, it ends this case in the

bank's favor. *Pearce* v. *Madison, etc., R. Co.*, 21 How. (U. S.) 443; Field on Corp., sects. 156, 157, 312, 313; *The State* v. *Commercial Bank*, 6 Smed. & M. 237; Green's Brice's Ultra Vires, 395, sect. 396, note; *Adriance* v. *Roome*, 52 Barb. 399; *Wild* v. *Bank of Passamaquoddy*, 3 Mason, 505; Green's Brice's Ultra Vires, 159 (note), 397, 399, 427 (note), 637, 639, 643 (note); Dill. on Mun. Corp., sect. 381; *Marsh* v. *Fulton County*, 10 Wall. 683; 7 Wall. 676; 8 Allen, 109; Ang. & Ames on Corp., sect. 291; Mart. & Y. 179; 3 McLean, 102; 4 McLean, 8; *Brent* v. *Bank of Washington*, 10 Pet. 617; *Union Bank* v. *Laird*, 2 Wheat. 393.

But if there be a conflict in the authorities as to the legally imposed duty of Mrs. Pinson to examine the by-laws of the bank, in this case, before dealing with it, that question is fully settled by the terms of the charter. She was unquestionably required to examine the charter to ascertain whether such a corporation had an existence, for what purposes, and what were its powers. When she looked at the charter, her attention was directed at once to the by-laws.

2. This charter is short, and the third section gives the board of directors the power to organize and establish the bank, to appoint its officers, to make all rules and by-laws necessary for conducting its business, for the preservation of its property, for the transfer of stock, and the protection of the interests of the corporation against the stockholders and all other persons.

The charter directed Mrs. Pinson's attention specially to the by-laws for the information which she examined the charter to find. Could she stop here, throw aside the charter, and determine that she would not look to the by-laws, the unerring source of information to which the charter directed her attention? We think not. "It is a general rule that a paper which especially refers to another paper within the power of the party [the by-laws were open to her inspection] gives notice of the contents of that other paper." *Livingston* v.

*Maryland Ins. Co.*, 7 Cranch, 538, 539 ; 2 Mass. 53.  " Where inquiry is a duty, the party bound to make inquiry is affected with all the knowledge which he would have got had he inquired."   *Cordova* v. *Wood*, 17 Wall. 1.  " Whatever is enough to excite attention or put the party on inquiry is notice of everything to which the inquiry might have led.   Sufficient information to lead to a fact shall be deemed sufficient to charge a party with knowledge of it."   *Parker* v. *Foy & Florer*, 43 Miss. 266 ; *Kennedy* v. *Green*, 3 Myl. & K. 719 ; *The Ploughboy*, 1 Gall. 41 ; *Hinde* v. *Vattier*, 1 McLean, 128 ; *Carr* v. *Hilton*, 1 Curt. 393 ; *Wailes* v. *Cooper*, 24 Miss. 228 ; 1 Story's Eq. Jur., sect. 400.  " Whatever is sufficient to direct the attention to the prior rights and equities of third persons, and to enable him or her to ascertain their nature by inquiry, will operate as notice."   2 Hare & Wall. Ld. Cas. Eq. 1, first note to *Lenere* v. *Lenere*, 116 ; *Pendleton* v. *Gray*, 2 Paige, 202 ; *Sigourney* v. *Mann*, 7 Conn. 324 ; 2 Conn. 186 ; 3 Conn. 146 ; 4 Cow. 717 ; 1 McLean, 110.   In contemplation of law, Mrs. Pinson had notice of the by-laws as well as of the charter of the bank.

3. Of the power of the directory to pass by-laws regulating the transfer of stock, and giving the bank a lien on the stock to secure the indebtedness of the stockholder, there can be no doubt.   See third section of the charter.   *Union Bank* v. *Laird*, 2 Wheat. 393 ; *Brant* v. *Bank of Washington*, 10 Pet. 614 ; Field on Corp., sect. 304 ; *Heland* v. *Lowell*, 3 Allen, 407 ; *Church* v. *City, etc.*, 5 Cow. 538 ; *St. Louis* v. *Boffinger*, 19 Mo. 13 ; *Taylor* v. *Carondelet*, 22 Mo. 105 ; *Hopkins* v. *Mayor, etc.*, 4 Mee. & W. 621 ; 4 Biss. 227 ; *Child* v. *Hudson Bay Co.*, 2 P. Wms. 207 ; *Black* v. *Zacharie*, 3 How. 511–513.  " The by-laws have the force and effect of a legislative act."   Field on Corp., sect. 304.   And they may provide what books shall be kept by the company, by whom and how, for the transfer of stock from one to another, and for securing to the corporation a lien on all such stock for debts due the corporation.   Ibid.  " No person can acquire a legal title to any

shares except under a regular transfer according to the rules
of the bank ; and if any person takes an equitable assignment,
it must be subject to the rights of the bank under the act of
incorporation, of which he is bound to take notice." *Brent*
v. *Bank of Washington*, 10 Pet. 617 ; *Union Bank* v. *Laird*,
2 Wheat. 393 ; Morse on Banking, 512, 513. The assignee
takes the certificate subject to the lien of the bank. *McNeil*
v. *Tenth National Bank*, 46 N. Y. 325 ; *Bank of Utica* v.
*Smalley*, 2 Cow. 770 ; *Gilbert* v. *Manchester Iron Co.*, 11
Wend. 627 ; 22 Wend. 362 ; *New York & New Haven R. Co.*
v. *Schuyler*, 34 N. Y. 80.

4. Another ground relied on by the defendant in error in
support of her action is that the bank did not comply with
its own by-laws in issuing its certificates of stock.

It is said that the by-laws provide expressly that the certifi-
cate of stock issued to each stockholder shall state on its face
that the stock represented by the certificate is not transferable
so long as the stockholder shall be indebted to the bank, as
*principal or otherwise*, and that this provision was omitted
from the face of the certificates issued to the Crumps and
assigned by them to Mrs. Pinson. But we confidently assume
that Mrs. Pinson has not been injured or prejudiced by the
omission, either in fact or in contemplation of law. If Mrs.
Pinson was chargeable with notice of the charter and by-laws,
as we have argued, then she saw this provision in the by-laws
for herself, and could not have been misled, injured, or
deceived by its omission from the certificates. But if she was
only required by law to examine the charter, and not the by-
laws, then when she examined the charter her attention was
directed by it to the by-laws.

*W. S. Featherston*, of counsel for the plaintiff in error,
argued the case orally.

*Fant & Fant*, on the same side.

1. Under the third section of the bank's charter, the board
of directors made a by-law which regulated the transfer of
stock, and, to promote the interest of said company, further

provided that "no transfer of stock should be made by any stockholder who was liable to the company for any sum of indebtedness, either as principal or otherwise." Did this by-law create a lien on the stock in controversy?

It is admitted that B. S. and William Crump, at the time of the transfer to Mrs. Pinson, were indebted to the bank in a large sum, to wit, about $16,000.

We think the weight of authority clearly establishes the proposition that the plaintiff in error, by virtue of its charter and the by-law aforesaid, did have a lien upon the stock of B. S. and William Crump to secure their indebtedness, and that Mrs. Pinson, the assignee, took only an equitable right to the shares, encumbered with all the liens that had become fastened upon them in the hands of the assignor. Morse on Banking, 506; Field on Corp., sects. 131, 132, 136–138, 304, 310; 1 Potter on Corp., sects. 76, 78. From the latter authority we quote: "Sometimes, however, these provisions as to the right to impose conditions upon liens upon stock, and the restrictions as to the transfer, are in the charter itself; and *whether in the one or the other* (the charter or by-laws), it is equally effective, and may be made to extend to the restraint upon the receipt of dividends until all indebtedness to the corporation is discharged," etc. "A by-law of a bank giving to the institution a lien upon the shares of a stockholder for debts due from him to the bank is a reasonable and valid by-law." See also Ang. & Ames on Corp. 570, 572, 574, 575. *St. Louis Ins. Co.* v. *Goodfellow*, 9 Mo. 150; *Mechanics' Bank* v. *Merchants' Bank*, 45 Mo. 514; *Ive* v. *Bachman*, 2 Cent. L. J. 119.

In the last case cited the charter provided as follows: "To make by-laws not inconsistent with existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock." One of the by-laws was as follows: "No transfers shall be made or allowed by any stockholder who at the time is indebted to the bank." The certificate of stock was in the following form: "This certifies that A. B. is the owner of —— shares of capital stock of the W. G.

---

---

Savings Bank of Kansas City, transferable only on the books of said bank, in accordance with the by-laws thereof, in person or by attorney, on the surrender of this certificate.'' All of which makes that case strikingly like the one at bar ; and the Supreme Court of Missouri, in an elaborate opinion, recognize and enforce the lien thus created by a by-law. See also 13 N. Y. 599 ; 11 Wend. 527 ; *Union Bank* v. *Laird,* 2 Wheat. 390 ; *Farmers' Bank* v. *Inglehart,* 6 Gill, 50 ; *Brent* v. *Bank of Washington,* 10 Pet. 614 ; *Vansands* v. *Middlesex County Bank,* 26 Conn. 144 ; *Conant* v. *Seneca County Bank,* 1 Ohio St. 298 ; *Bank of Utica* v. *Smalley,* 2 Cow. 770 ; *Plymouth Bank* v. *Bank of Norfolk,* 10 Pick. 454 ; *Marlborough Bank* v. *Smith,* 2 Conn. 579 ; *Northrop* v. *Newton Turnpike Co.,* 3 Conn. 544 ; *Fisher* v. *Essex Bank,* 5 Gray, 373. In *Case* v. *Bank,* 10 Otto, 446, it is strongly intimated that such a by-law would be valid and binding.

2. But it is boldly asserted upon the other side that the lien, if it ever existed, has been waived ; and in support of this position they rely upon the fact that the certificate of stock does not contain the full provisions of the by-law. But the omission from the stock-certificates of a part of the by-law is no waiver of the lien. Ang. & Ames on Corp., sect. 575 ; *Reese* v. *Bank of Commerce,* 14 Md. 271 ; Morse on Banking, 507, 508. According to the elementary works, nothing short of a transfer upon the books of the bank would be a waiver of the lien. This, by the proper officers, would be.

*Arthur Fant,* of counsel for the plaintiff in error, made an oral argument.

*A. M. Clayton,* for the defendant in error.

The vital points in the case are, whether the bank had a lien on the stock assigned by the Crumps, as against Mrs. Pinson, the assignee ; and, if it ever had such, whether it did not lose it by waiver. It is not to be doubted that a stockholder in a moneyed corporation has a perfect ownership of his stock, and that he may sell and transfer it to whom he pleases. Ang. & Ames on Corp. (10th ed.) 564 ; *Brightwell* v. *Mallory,* 10

Yerg. 196 ; 10 Ohio, 97 ; *Farrington* v. *Tennessee*, 5 Otto, 687. The owner may sell and assign such shares, as any other personal property. The right of alienation is one of its incidents, and cannot be prohibited. A delivery of stock as collateral security for an indebtedness, with the usual power of attorney indorsed thereon, and signed by the owner in blank, transfers all the owner's title, both legal and equitable, subject only to the liens of the corporation, and only the holder of the certificate can cause a transfer on the books of the company. Field on Corp., sect. 110. See also *Greenleaf* v. *Luddington*, 15 Wis. 558 ; *Bank* v. *Lanier*, 11 Wall. 369. The transfer or assignment must be a *bona fide* one ; but, if so, " it will be perfectly good, for whatever purpose, for whatever consideration, and whenever made." " The holder of the certificate, as between himself and the person from whom he received it, acquires a perfect title to the stock." Green's Brice's Ultra Vires (2d ed.), 178, 179.

The plaintiff in this action is entitled to recover unless the claim of the defendant to a prior and superior lien on the stock can be sustained. Without some express provision of the law, of its constitution, or other lawful regulation, a corporation has no lien on the shares of its stockholders for amounts due thereon, or other indebtedness to the company. Field on Corp., sect. 136. In other words, by the common law a corporation has no lien on the shares of its stockholders for debts due to it. Ang. & Ames on Corp. (10th ed.), sect. 574. This brings up the direct point whether the by-law which is relied on to give a lien on the stock in this case to the bank for the debt of the Crumps has that effect. Its words are : " No transfer of the stock of this association shall be made by any stockholder who shall be liable to the company for any sum of indebtedness, either as principal or otherwise, *and certificates of stock shall contain upon them notice of this provision.*" Had this provision been inserted on the certificates of stock in this instance, this case would never have

arisen ; the stock would never have been taken, as the plaintiff in her evidence states.

The by-law was an entirety. There was no dispensing power anywhere to dispense with an essential part of it. To create a lien, and to protect the community, the certificate was required to contain the provision on its face. If not there, the lien did not exist. " Where a statute or special charter prescribes the particular acts to be done or forms to be adopted, * * * in such case the statute directions must be strictly pursued or they will have no binding force." 1 Potter on Corp., sects. 40, 75. Restrictions can only be removed by the Legislature. The by-laws of a corporation have all the force of a statute as to the corporation itself. Id., sect. 40. The power to create a lien on the stock in virtue of a by-law was no greater or other than would have been a statutory power. In this court it has become axiomatic that all statutory powers must be strictly complied with, and all prescribed formalities observed, or the act is void. *Learned* v. *Matthews*, 40 Miss. 270 ; *Fant* v. *McGowan*, 57 Miss. 779. For its failure to comply with the requisition of putting the provision on the face of the certificate, it never had a lien. *Rock Creek* v. *Strong*, 6 Otto, 278.

This provision could not possibly be regarded in a more favorable light than as a condition precedent for the bank. When a party claims the benefit of a contract containing a condition precedent on his part, he must plead and prove performance of the required condition. *Fultz* v. *House*, 6 Smed. & M. 404 ; *Huntington* v. *Texas*, 16 Wall. 402 ; Benj. on Sales, 422. The provision may be deemed in the nature of a registration law. If a party proposing to buy stock, knowing the exact terms of the by-law, should see that the certificates which were issued and put forth did not contain the terms of the by-law as required, he would be justified in concluding that in practice the bank waived it and disregarded its enforcement. To hold otherwise would put it in the power of the bank to commit the most enormous frauds.

If a party about to take an assignment of an uncommercial instrument asks the maker if there is any defence or offset to it, and is told there is none, the maker is precluded thereby from ever setting up any. *Land* v. *La Coste*, 5 How. 471; *Hamer* v. *Johnston*, 5 How. 698. The by-laws of the board cannot affect this transaction. By-laws regulate, control, and manage the affairs of the corporation, and do not interfere with the rights of third persons. Potter on Corp., sect. 76. But if it were to be held that the plaintiff here had implied notice of the by-law, that notice would be controlled by the fact that the certificate did not accord with the by-law, and did not contain on its face the provision meant to preserve the lien, and without which the lien could not exist. The certificates show that, in practice, the bank had disregarded its by-law and waived all claim to a lien, and hence it would not be binding on a *bona fide* purchaser for value. All concede that a lien does not exist by the common law, and unless granted by a statute, a charter, or authoritative by-law, it does not exist at all. How, then, can it exist unless it conforms to the law of its creation? If a charter is passed, granting corporate powers upon compliance with certain terms, the corporation does not exist till the charter is complied with. Is the obligation less imperative in regard to a lien in favor of a corporation? You may have a lien if you will put it on the face of your certificate. Can you have it unless you so put it? If you can, you send forth your stock as a delusion and a snare.

Thompson, in his work on Stockholders, lays down the rule broadly that the owner of stock has the right to transfer it. The words, "transferable on the books of the company," he says, are merely cumulative, and do not exclude other modes of transfer, etc. Thomp. on Stock. 210.

There are cases which go so far as to hold that the by-laws of a bank cannot subject the shares of its stockholders to a lien for their debts, and that the power to regulate the manner of transfer does not embrace the power to create a lien. *Rosenback* v. *Bank*, 1 Burn. 509. Whether this ruling is

right or not, it is a persuasive argument to prove that no lien of this kind ought to be upheld which does not come up to all the requirements of the by-law.

*A. M. Clayton* also argued the case orally.

*E. M. Watson*, on the same side.

1. The bank had no lien upon the stock by the common law. Morse on Banking, 505 ; Potter on Corp. 339 ; Redf. on Rys. 118 ; *Massachusetts Iron Co.* v. *Hooper*, 7 Cush. 183 ; 8 Pick. 90. No lien is given by the charter. Acts 1866, p. 76. The plaintiff in error claims a lien by virtue of a by-law, and if it have any it was thus acquired. But it can acquire no lien by by-law unless the charter authorizes such a by-law.

Has this bank any power, then, by virtue of its charter, to create a lien upon this stock? The clause authorizing the directors to make by-laws regulating business, etc., of the bank does not give such power. *Lanier* v. *Bank*, 11 Wall. 369 ; *Bullard* v. *Bank*, 18 Wall. 589. The clause giving them power to regulate the *mode and manner* of transfer of stock does not give the power. *Johnson* v. *Loftin*, 6 Cent. L. J. 124, 127–129. The granting of the power to regulate the mode and manner of transfer is conclusive that it was not intended that the power to impose a lien should be given. 1 Redf. on Rys. 89 ; *Bullard* v. *Bank, supra*.

In reading the text-books, the court will find the statement that " a lien can be impressed by a by-law," but if you will examine the cases cited you will see that in each case the court construes the charter, and determines by its provisions whether the power to make the by-law is granted by the charter. Hence we maintain that the charter does not authorize a by-law imposing a lien.

2. But, granting the power to make such by-laws, still the bank has no lien under the by-law here. This by-law provides that there shall be a lien, and that notice of the lien shall be given on the face of the certificates which we hold. The certificates were issued and kept outstanding for years without any such notice upon them. Was not the failure of the bank

to place the notice on the certificate an abandonment of the lien entirely? The same power — to-wit, that of the directors — which sought to create the lien attended to the issuance of stock-certificates. If the directors had power to create the lien they had power to abandon it. Can the bank waive the obligation which the by-law laid upon it, and assert the obligation it laid upon us for its benefit? Can it assert a lien when it has waived the duty to notify us of the lien? The same by-law laid an obligation on them to issue certificates in a certain way for our protection, and upon us an obligation for their benefit. They have failed to observe their own by-law, so far as it imposed a duty for our benefit. The enforcement of the by-law against itself must be held a condition precedent to enforcing it against us. The fair interpretation of the by-law is, that a lien shall be created upon all stock evidenced by certificates which give notice of the lien. Potter on Corp. 339, note; *Ransom* v. *New York City*, 20 How. (U. S.) 581; *Insurance Co.* v. *Eggleston*, 96 U. S. 572; 12 Gray, 336-338, 271; 11 Wall. 277, 278.

*E. M. Watson* made an oral argument also.

GEORGE, J., delivered the opinion of the court.

The principal question raised by this record is whether the plaintiff in error, under its charter and by-laws, and the certificates of stock involved in this controversy, has a lien on the stock as against the defendant in error.

By the third section of the charter of the Holly Springs Savings and Insurance Company, now called the Holly Springs Bank, a directory of five persons and a president were provided for, and they were empowered to make "all needful rules, by-laws, and regulations for the control and management of the business and affairs of said company, its property, and the *mode and manner* of transferring its stock, and any and all other questions which in their judgment will promote the interest of said company; *provided*, the same are not incon-

sistent with the Constitution and laws of the United States or this State."

Under this section the company made various by-laws, of which sect. 13 provided that " the stock of the company shall be assignable only on the books of the company ; and a transfer-book shall be kept, in which all assignments and transfers of stock shall be made, and no transfer of the stock of the association shall be made by any stockholder who shall be liable to the company for any sum of indebtedness, either as principal or otherwise, *and certificates of stock shall contain upon them notice of this provision.*"    Sect. 14 provided that " certificates of stock, signed by the president and cashier, may be issued to stockholders, and the certificates shall state on their face that the stock is transferable only upon the transfer-books of the company ; and when stock is transferred, the certificates thereof shall be returned to the company and cancelled, and new certificates issued."

In February, 1874, a certificate for stock, duly signed, was issued to B. S. Crump, as follows : " This is to certify that B. S. Crump is entitled to eighty-two shares, of fifty dollars each, numbered 78, in the Holly Springs Savings and Insurance Company, transferable at the office, in person or by attorney." At the same time a similar certificate, numbered 79, was issued to William Crump.

In March, 1878, B. S. and W. Crump, being in possession of these certificates, borrowed $6,000 from the defendant in error, and assigned both these certificates to her as collateral security for the loan.   This assignment was indorsed on the back of each certificate, and is in the following words : " For value received, I assign this certificate of stock to S. D. Pinson, and authorize her, as my attorney, to demand and have transfer of the same made to her on the books of the company," and signed by the assignor.

Mrs. Pinson, before advancing the money, gave notice of this pledge to the bank ; and the note given for the loan not falling due till the fall of the year, when yellow fever was raging in

Holly Springs, and the bank on that account was closed, she made no demand for a transfer on the books till in December of the same year, which transfer being refused by the bank, she brought this action to recover damages on account of said refusal.   She recovered judgment for the full value of the stock, $8,200.

The cause has been argued with distinguished ability on both sides, both at the bar and in writing.   The authorities cited on both sides are very numerous, and their perusal has greatly aided us in arriving at the conclusion we have reached.

It is well settled that at common law a corporation has no lien on the stock of its shareholders for an indebtedness to it. Such liens, when they exist, result either from a provision in the charter to that effect, or from a by-law enacted by the corporation in pursuance of authority conferred by the charter.   Usually the lien, when it exists at all, is given by the charter, which, being a public law, as well as the act by which the corporation is created, is notice to all persons dealing with the company.   *Union Bank* v. *Laird*, 2 Wheat. 390.   The lien may, however, be created by a by-law, as was held at an early day by Lord Chancellor Macclesfield in *Child* v. *Hudson Bay Company*, 2 P. Wms. 12, and very generally since.   When thus created, there seems to be some diversity of opinion as to its effect against an innocent purchaser of the stock for value and without notice of the lien.   Morse, in his work on Banks and Banking (p. 442), denies that the lien can be created by by-law alone as against such purchaser, and Potter on Corporations (vol. 1, sect. 99) and Angell & Ames on Corporations (sect. 355) say this is unsettled.

This difference is more apparent than real, for it seems to be well recognized that a by-law has no extra-corporate force, and is only binding on those dealing with the corporation who have notice of it, or who deal with it under such circumstances that they are bound to take notice of it.   A solution of the question will be found in the right determination of the categories in which notice is inferred.   By-laws of private corporations are

not in the nature of legislative enactments, so far as third persons are concerned. They are mere regulations of the corporation for the control and management of its own affairs. They are self-imposed rules, resulting from an agreement or contract between the corporation and its members to conduct the corporate business in a particular way. They are not intended to interfere in the least with the rights and privileges of others who do not subject themselves to their influence. It may be said with truth, therefore, that no person not a member of the corporation can be affected in any of his rights by a corporate by-law of which he has no notice. In some instances, as we have seen, if he have no actual notice he will be held to have constructive notice. In dealing with an officer or agent of the company, a third person, as in other cases of agency, is bound to ascertain the authority of the person with whom he deals. If he deal with an officer — as, president or cashier — the general scope of whose duties is well known and ascertained by law, he may rely, without further inquiry, on such officer possessing the ordinary and usual powers. He is not bound by any secret limitation or restriction placed on them by the by-laws or otherwise. If he deals with such officer in relation to a matter outside of these ordinary and usual powers, or with a special agent, he is bound to inquire into his authority. So, if the transaction be about a matter on which, by the terms of its charter, there must be a regulation of the company as to the mode of doing it, he is bound to make inquiry as to the mode. Applying these principles to the case before us, we find that the president and cashier are the persons usually employed to give certificates of stock, and that the former, as head of the corporation, is the appropriate person to give the certificate, in so far as it relates to the membership of the shareholder, and that the cashier, the executive hand of the corporation as to its financial matters, may appropriately certify to the pecuniary interest of the shareholder. Mrs. Pinson, therefore, was under no obligations to make any inquiry as to the power of these officers to sign the certificates of stock, and in fact their

actual authority is not disputed.   On looking at the charter, she learned that the " mode and manner " of making the transfer of the stock was subject to the regulation of the company by its by-laws, but she found nothing which specifically authorized the company to interfere with the power of disposing of his stock possessed by each stockholder.   The president and directors were authorized to regulate the " mode and manner" of the transfer of stock.   This did not include the authority to prevent, or even to restrict the power of disposition.   If this authority exists at all, it results from the general power conferred in the charter to make all needful rules and regulations for the management and control of the business of the corporation.   She did not, therefore, have notice from the charter that there would be any by-law preventing a disposition of his stock by a debtor to the bank.   The utmost that can be inferred against her on this subject is, that as there must be some mode in which the *jus disponendi* of the shareholder as to his stock must be exercised, she was bound to take notice that there was a regulation on this subject. She was bound only to know as to the " mode and manner " of the transfer, and this information was conveyed to her in the certificate itself, in the phrase, " transferable at the office, in person or by attorney."   Having this information on the face of the certificate itself, issued by the proper officers of the company, she was not bound to inquire further.   She had a right to repose confidence in the terms of the certificate of the stock. That the form in which certificates are issued is material and binding on the bank, and may be relied on by a purchaser, is well settled.   It is also settled that the statements of such certificates as to the manner of their transfer constitute the regulation on that subject.   *Lanier* v. *Bank*, 11 Wall. 369 ; *Vansands* v. *Middlesex County Bank*, 26 Conn. 144.   The power of a shareholder to dispose of his stock is not derived from the bank.   It is inherent in him as a part of his proprietorship. The bank's power is simply to regulate the mode of its exercise.   When this certificate said that Crump was entitled to the

named shares of stock, and that they were "transferable at the office, in person or by attorney," it .asserted the right of a purchaser to have the transfer made at that place, and it asserted no more. The certificate did not say even that there were by-laws of the bank according to which the transfer was to be made, as is usual in such certificates. It contained no intimation on its face of any restriction on the power of transfer, nor did it refer to any other instrument in which such restriction might be found. The assignability of these certificates resulted from a right of the shareholder to dispose of his property. The ease with which assignments could be made was an essential element in the value of the shares, enhancing it both to the shareholder and the bank. It is true, they are not commercial paper ; but, as was said in *Lanier* v. *Bank,* 11 Wall. 369, they approximate it as near as practicable. The bank having adopted a form, in this case, which asserted the right to transfer with no other limitation on it than that it should be done at the office of the bank, and with no reference to the existence of any by-law or regulation which might impose other restrictions, good faith and fair dealing require that the purchaser in good faith, acting according to the terms of the certificate, should be protected. But there is another ground equally conclusive against the right of the bank to assert this lien .against Mrs. Pinson. The by-law under which the lien is asserted directed that notice of the lien should be given by the certificate. This was not done. It is not claimed that this certificate, as it was phrased, was unauthorized ; in fact, it was admitted in the argument that all the certificates ever issued by the bank were in the same form. This would therefore be held to have been done with the consent of the directors, who, being stockholders, received their certificates framed as these were. The provision in the by-law requiring the notice must be held to mean that the lien would not be asserted against a person not having this notice. The by-law was binding on the company and its members as a legislative act. The company cannot be heard to assert a

claim in violation of its own by-law, especially when the violation is in a matter essential to the protection of the party against whom the claim is asserted. Moreover, the power to make the by-law was not by the charter vested in the shareholders, but in the directory. The board could therefore waive or repeal it. Ang. & Ames on Corp., sect. 354. There was here both a waiver and a repeal, so far as the purchasers of· the stock were concerned. The waiver was in the issuance of these particular certificates with the omission of the provision as to the notice. The repeal arose from the uniform course pursued by the bank in issuing certificates with the omission. Corporations are not permitted to pass by-laws in secret, and by their conduct to the outside world induce a belief in their non-existence. This uniform conduct, at least as to all who are not members of the corporation, will be held as making a by-law repealing the other. By-laws need not be in writing. They may be adopted as well by the company's conduct, and the acts and conduct of its officers, as by an express vote or an adoption in a meeting. Field on Corp., sect. 305.

We therefore conclude that the corporation had no lien as against the rights of Mrs. Pinson. Probably the lien exists as against the Crumps, and for this reason the judgment will be reversed, so that the recovery of Mrs. Pinson may be limited to the amount of her debt and interest and the reasonable attorneys' fees stipulated to be paid in the contract of loan. And the defendant in error agreeing to remit all but the principal and interest of the debt, and that judgment should be entered for that amount, it is ordered accordingly.