Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 It is unnecessary to decide whether the first and third pleas would answer the declaration, if the transaction pleaded 'were lawful, because the directors of the bank were forbidden by law from dealing with Culver in the manner they did. At the time this proceeding took place the Currency Act of 1863 had been superseded by the act of June 3,1864, which expressly repealed the former act. It is, therefore, by the provisions of the latter act that the conduct of banking associations must be governed, whether they were organized before or after it became a law. And in looking into • this act, we find these associations expressly prohibited from making any loan or discount on the security of the shares of their own capital stock. And so marked is the policy of Congress on this subject, that it does not allow a bank to' become the purchaser or holder óf its shares at all, unless absolutely necessary to prevent loss on a debt previously contracted in good faith, and not then for a longer period than six months. It is easy to see, that if the power were given to. a bank to loan money on the security of its shares, it would imply also a power'to become the owner of those shares, and this Congress iutended to guard against.
 

 These institutions were created to subserve public purposes, and not the mere private interests of their stockholders. And in no better way could this object be attained than by placing shareholders, in their pecuniary dealings
 
 *375
 
 with the bank, on the same footing with other customers. Besides, how could the capital of the bank be kept available for active use, if the shareholder, who had pledged his stock for borrowed money, should be unable to meet his obligation? To the extent of the debt the capital would be withdrawn, and it is hardly possible that this could be the case for any length of time, were the debt secured outside of the shares of the bank. But it is unnecessary to seek for the reason of this prohibition, as the provision concerning it is explicit, and free from ambiguity.
 

 Although the section in question forbids loans or discounts by a bank on the security of its own shares of stock, it is argued that this inhibition does not extend to the case of deposits made by one bank with, another. But a deposit is nothing but a loan of money, and is within both the letter and spirit of the provision. It is well known that country banks keep on deposit in New York, with baukers and merchants, a considerable amount of money for their own convenience, for which they receive more or less of interest. But whether interest be obtained or not, these deposits are, equally with paper discounted over the counter of the bank, loans of money, and the reason of the rule is equally applicable to them.
 

 The banker is accountable for the deposits he receives as a debtor, and the individual borrower of money from the bauk sustains no other relation to it. In both cases money is borrowed, to be returned in a greater or less period of time, according to the contract of the parties. Without pursuing the subject further, it is clear that the contract between the South Bend Bank and Culver was illegal, and cannot, therefore, be pleaded in avoidance of any duty imposed on the bank. It would seem, from the date of the certificates issued to Culver, that as soon as he took the stock he pledged it, and the bank is therefore .without the excuse of endeavoring to secure a pre-existing debt contracted iu good faith. The contract in its inception was in violation of law, and the bank cannot complain if it is made to suffer in consequence of it.
 

 
 *376
 
 The defence interposed by the second plea is equally unavailing to the plaintiffs in error. This plea assumes that the bank had a lien upon the stock of Culver for his indebtedness to it, without any special agreement on the subject, by virtue of the provisions of the 86th section of the Currency Act of 1863, restricting a shareholder from transferring his stock as long as he owes the bank, which remained in operation, although the section was repealed by the act of 1864, by means of a by-law adopted when the section was in force, declaring that the stock of the bank shall be transferable only on the books of the bank,
 
 subject to the provisions and restrictions of the act of Congress aforesaid.
 

 If it be conceded that the by-law intended to embrace the restrictions contained in the 36th section-, it is hard to see what good it accomplished, because, as long as this section was in force, it was the law of the corporation, known to all men, and did not need the aid of a by-law to render it operative. And if it be contended that a bank may, through the agency of a by-law, retain a particular section that has been repealed, it is difficult to see why it may not by the same means retain all the remaining sections of the repealed statute that are applicable to its business, and thus antagopize itself to the whole policy of Congress on the subject. But of necessity a by-law cannot operate in this way, nor is there any reason to suppose it was intended that this one should have such an effect-. In the absence of any action taken by the bank on the subject- since the new law went into operation, the fair inference is that this by-law is used as an afterthought to serve the purposes of this suit. Congress evidently intended, by leaving out of the law’ of 1864 the 36th section of the act of 1863, to relieve the holders of bank shares from the restrictions imposed by that section. The policy on the subject was changed, and the directors of banking associations were in effect notified that thereafter they must deal with their shareholders as they dealt with other people. As the restrictions fell, so did that part of the by-law relating to the subject fall with them.
 

 It remains to be seen whether, on the case stated, Lanier
 
 *377
 
 and Handy can recover of the bank for a breach of corporate duty, notwithstanding the specific shares had already been transferred to other persons through the power of attorney which Culver gave when he attempted to pledge his stock as security for the deposits to be made with his New York house. And, in considering this question, we are relieved of any necessity of deciding between conflicting equities, for this suit does not seek to disturb the title of the adverse purchasers to the specific stock. It leaves them in possession of .the property, and undertakes to subject the bank to damages for refusing to transfer the stock to the defendants in error. And, as we view this controversy, it makes no difference whether the transfers were actually made to other parties before or after the bank received notice of the assignment of the stock certificates by Culver to Lanier and ■Handy.
 

 The power to transfer their stock is one of the most valu■able franchises conferred by Congress on banking associations. Without this power, it can readily be seen the value .of the stock would be greatly lessened, and, obviously, whatever contributes to make the shares of the stock a safe mode .of investment, and easily convertible, tends to enhance their value. It is no less the interest of the shareholder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage.
 

 It is in obedience to this requirement, that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable. If we assume that the certificates in question are not different from those in general use by corporations, and the assumption is a safe one, it is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can
 
 *378
 
 buy with safety. He is told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know, that whoever in good faith buys the stock, and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes further, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates.
 

 In this state of case Lanier and Handy niade their purchase of Culver. They bought for value, without knowledge of any adverse claim, in full faith that the bank would observe its engagements, and pursued in all respects the directions given in the certificates. They were not told to give notice to the bank of their purchase, nor was there any necessity for notice, because, by the rules of the bank, Culver could not transfer the stock in the absence of-the certificates, and these they had in their possession. It is therefore clear, in making their purchase of Culver, that they had a right to rely on the certificates as securing to them the stock which they represented. And it is equally clear that the bank, in allowing this stock to be transferred to other parties while the certificates were outstanding in the hands of
 
 bond fide
 
 holders, was guilty of a breach of corporate duty, and as its conduct operated to the injury of Lanier and Handy, an action will lie in their behalf to obtain satisfaction for the injury.
 

 These views dispose of this case, and they are sustained by recent decisions in the Court of Appeals of New York and the Supreme Court of Connecticut,
 
 *
 
 and, as we are advised, they also are supported by the Supreme Court of New Jersey in a case not yet reported.
 

 Judgment affirmed.
 

 *
 

 Bridgeport Bank
 
 v.
 
 New York and New Haven Railroad Company, 30 Connecticut, 270; Same
 
 v.
 
 Schuyler et al., 34 New York, 30.