THE BUFFALO GERMAN INSURANCE COMPANY, Appellant, *v.* THIRD NATIONAL BANK OF BUFFALO, Respondent.

1. NATIONAL BANK — NOT ENTITLED TO AN EQUITABLE LIEN UPON ITS OWN SHARES, TRANSFERRED BY ITS DEBTOR TO A BONA FIDE PURCHASER. A national bank, incorporated under the National Banking Act of 1864 (13 U. S. Statutes at Large, 110), is not entitled, as against a *bona fide* purchaser, to an equitable lien upon its shares of capital stock for a debt which the stockholder had previously incurred to the bank, although a notice printed upon their face, based upon a by-law of the bank, prohibited any transfer without the consent of the directors, by any stockholder liable to the bank as a debtor, and declared such liability to be a lien upon the stock, inasmuch as the act prohibits loans by the bank upon the security of its own shares, and thus renders any by-law in contravention thereof, or any statement based thereon, inoperative.

2. DISTINCTION BETWEEN EXECUTED AND EXECUTORY CONTRACTS. Whatever force may have been given, in the case of executed contracts, to the doctrine that only the government can, by charter proceedings, question a transaction between a national bank and its debtor, violative of the provisions of the Banking Act, that doctrine can have no force in a case where such a bank is seeking to create, as against a third person who is a *bona fide* purchaser of its shares, a lien based upon an implied executory contract, and in face of a statutory provision that the bank shall not have such a lien or take such a security.

3. NOTICE TO PURCHASER — NOT INFERABLE FROM UNAUTHORIZED BY-LAW PRINTED ON THE FACE OF THE SHARES. The fact, that such an unauthorized by-law is printed on the face of the shares, cannot be notice to a *bona fide* purchaser of them that his purchase will be subject to a lien upon the part of the bank for the indebtedness of the stockholder to it.

*Buffalo German Ins. Co.* v. *Third Nat. Bank*, 29 App. Div. 137, reversed.

(Argued January 30, 1900; decided February 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 16, 1898, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at an Equity Term.

This action was brought to obtain a judgment directing the defendant to transfer upon its books to the plaintiff four hundred and fifty shares of its capital stock. All of these shares stood in the name of Emanuel Levi, who had, some years previously, pledged the same with, and delivered the certificates thereof to, the plaintiff to secure the payment of his promissory notes for moneys loaned. At the time that he so pledged the shares of stock, he executed and delivered to it an assignment of the same in the usual form; by which he assigned and transferred to it, by name, the shares of defendant's capital stock standing in his name on the books and constituted one of the officers of the plaintiff his attorney to effect the transfer thereof, etc. He, at the same time, executed and delivered to the plaintiff a receipt for the moneys loaned to him, which stated the rate of interest the loan should carry, the assignment of collateral security for its payment and that the plaintiff was authorized, in case of default in payment of the principal and interest of the loan, to sell the securities at public or private sale, etc.

Levi having died, a demand was made upon his executors for payment of the notes, with notice that, in the event the same were not paid and the stock redeemed, on or before a certain date, the stock would be sold at public auction and the proceeds applied in liquidation of the indebtedness of their testator. On June 30th, 1896, a public sale was regularly had, at which the stock was purchased by the plaintiff. Thereafter, a demand of the plaintiff upon the defendant to transfer the stock so purchased upon its books was refused.

The defendant claims a lien upon the stock by force of a statement printed upon the face of the certificates, in the following language: "This is to certify that Emanuel Levi is the owner of —— shares of one hundred dollars each of

the capital stock of the Third National Bank of Buffalo, subject to the lien referred to in section 15 of the by-laws of said bank in the following words : 'No transfer of the stock of this association shall be made without the consent of the Board of Directors by any stockholder who shall be liable to the association, either as principal debtor or otherwise, which liability shall be a lien upon the said stock and all profits thereof and dividends.' And that the said stock is transferable only upon the books of the bank by him or his attorney on the surrender and cancellation of this certificate and compliance with said by-law."

Levi had been a director of the defendant and, at the time he pledged his stock to the plaintiff, he was under an indebtedness to the defendant. The trial judge made this finding with respect to it : " That at the time of the sale of the stock in question to, and its purchase by, the plaintiff, the estate of Emanuel Levi was largely indebted to the defendant, and the defendant then had and now has a right to a lien upon said certificates and stock as security for the payment thereof ; that Levi's indebtedness to the defendant accrued prior to the pledge of any of said certificates to the plaintiff ; that no tender or offer to pay said indebtedness by the plaintiff, or by any other person or party has ever been made. That the plaintiff was notified of the defendant's claim before the sale of June 30, 1896, and the defendant forbade such sale except subject to the defendant's claims, demands and liens."

The defendant at no time had possession of Levi's certificates of stock, and its claim is of an equitable lien upon the same for all the indebtedness owing by him as its stockholder, by reason of the statement upon the certificates. It is, also, claimed that he orally stated to the defendant's president that " he had a large amount of stock in the bank and that was security for his loans " and that, though " it was in the safe deposit vault," the bank " could consider it there as delivered as collateral to its loan." The trial court made no finding as to these facts ; nor otherwise upon the subject than the finding above given. The conclusion reached by the trial court

upon the facts was, in substance, that the defendant had a lien upon the stock, for the amount of the indebtedness existing against the estate of Levi, when the certificates were purchased by the plaintiff, and that the latter's right to a transfer to itself of the stock was subject to the lien of the former.

Judgment was entered dismissing the complaint upon the merits, upon the sole ground that the plaintiff is entitled to a transfer of the stock in question by the defendant and to have new certificates issued to it in place of those to be surrendered and canceled, when, but not until, it should pay to the defendant an amount sufficient to satisfy its lien for the indebtedness to it owing by Levi's estate. This judgment was affirmed in the Appellate Division by a divided court and the plaintiff has appealed to this court.

*Arthur W. Hickman* for appellant. Defendant had no lien, actual or constructive, on stock of Levi held by plaintiff. Defendant had no authority to make a by-law such as purports to be set out in its stock certificates. Said by-law was unauthorized and void, and created no lien on the stock. (13 U. S. Stat. at Large, 118; *Bank* v. *Lanier*, 11 Wall. 369; *Bullard* v. *E. Nat. Bank*, 18 Wall. 589; *S. Nat. Bank* v. *Bank of N. Y.*, 10 Bush, 367; *Conklin* v. *S. Nat. Bank*, 45 N. Y. 655; *Driscoll* v. *W. B. & C. M. Co.*, 59 N. Y. 96; *Feckheimer* v. *N. E. Bank*, 79 Va. 80.) The defendant had no actual pledge of the stock in suit as collateral for any indebtedness which Levi might have owed it. It never had possession of the stock in question. (*Cortelyu* v. *Lansing*, 2 Caines' Cas. 200, 202; *Garlick* v. *James*, 12 Johns. 146; *Wilson* v. *Little*, 2 N. Y. 443; 18 Am. & Eng. Ency. of Law, 595, 598; *Black* v. *Bogart*, 65 N. Y. 601; *McComber* v. *Parker*, 14 Pick. 497; *F. Nat. Bank* v. *N. E. Bank*, 92 U. S. 122.) If the defendant ever had any lien upon the stock in question, either actual or constructive, it waived that lien by a failure to enforce it. (*Barrett* v. *Goddard*, 3 Mason, 107; *Gilman* v. *Brown*, 1 Mason, 191; 4 Wheat. 255.) The defendant has failed to show that there was any indebtedness due from Levi

to it for which it could claim a lien. (*Austin* v. *Munro*, 47 N. Y. 360.)

*Adelbert Moot* for respondent. As the defendant secured an equitable lien upon the stock in question before the plaintiff secured a lien thereon, the lien of the defendant is prior in time and prior in right, and the plaintiff having taken the stock of the defendant with notice of the defendant's rights therein, it follows that the plaintiff acquired its lien subject to the lien of the defendant, and the plaintiff cannot compel the defendant to transfer the stock upon its books until the plaintiff has redeemed the stock from the lien of the defendant thereon. (*Crocker* v. *Whitney*, 71 N. Y. 161; *Nat. Bank* v. *Whitney*, 103 U. S. 99; *Thompson* v. *St. Nicholas Bank*, 146 U. S. 240; *Nat. Bank* v. *Matthews*, 98 U. S. 621; *Nat. Bank of Xenia* v. *Stewart*, 107 U. S. 676; *Conklin* v. *S. Nat. Bank*, 45 N. Y. 655; *Driscoll* v. *W. B. & C. M. Co.*, 59 N. Y. 96.) This case does not turn upon the question of whether the defendant has a perfect legal lien upon the stock as a bailee, but it is enough that the defendant has an equitable lien thereon, which the court can require the plaintiff to satisfy as a condition of requiring the defendant to transfer the stock to the plaintiff, and the by-law recited in the stock and assented to by Levi by acceptance of the stock, and Sweet's testimony as to talks had with Levi when the loans were made, prove this equitable lien on the stock. (1 Greenl. on Ev. [14th ed.] § 23.) The by-law of the defendant, made a part of its stock certificate, is not void and is not repugnant to the statute, but it is part of the very stock and contract with Levi, of which plaintiff claims the benefit as the privy and assignee of Levi, hence the plaintiff is a party thereto and is stopped from claiming it does not bind plaintiff as a part of such contract and collateral. (3 Pom. Eq. Juris. §§ 1233, 1234; 1 Pom. Eq. Juris. §§ 165, 172; U. S. R. S. § 5201; 1 Greenl. on Ev. [14th ed.] § 23.) No judgment can be rendered against the defendant in this action, because the Levi estate is interested as the principal debtor, and the failure to

make it a party defendant herein is fatal to any judgment the plaintiff can recover in this action. (Code Civ. Pro. § 452; *Osterhoudt* v. *Bd. Suprs.*, 98 N. Y. 239.)

Gray, J. The decision of the question in this case turns upon provisions of the National Banking Act, passed by Congress in 1864, and the construction which they should receive, in the light of opinions of the Supreme Court of the United States. The original act for the incorporation of national banks, which was passed in 1863, contained, in section 36, the provision that the capital stock "shall be assignable on the books of the association in such manner as its by-laws shall prescribe, but no shareholder in any association under this act shall have power to sell or transfer any share held in his own right so long as he shall be liable, either as principal debtor, surety or otherwise, to the association for any debt which shall have become due and remain unpaid * * * ; and no stock shall be transferred without the consent of a majority of the directors while the holder thereof is thus indebted to the association." In 1864, the act of 1863 was repealed by a new enactment as to national banking associations, whereby it was provided, in section 35, "that no association shall make any loan or discount on the security of the shares of its own capital stock, nor be purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith," etc. (13 U. S. Stat. at Large, 110.) The act of 1864 did not re-enact any of the provisions which were contained in section 36 of the act of 1863 and the section, therefore, was expressly repealed. (*Bullard* v. *Bank*, 18 Wall. at p. 594.)

The defendant was organized under the act of 1864 and there was, not only, no authority in the act for the by-law referred to, and embodied in the language of the certificates of stock, but such a by-law would be inconsistent therewith. (*Bullard* v. *Bank, supra.*) The restrictions imposed by section 36 of the act of 1863 upon the shareholders had been

removed and banking associations were prohibited from permitting any indebtedness on the part of their stockholders upon the security of the shares of their own capital stock. It would seem, therefore, that a by-law seeking to impose restrictions upon transfers of stock, by declaring a lien upon the stock to the extent of any liability of the stockholder to the bank, would be quite inoperative to accomplish such a purpose and, equally so, any statement upon the certificate of stock based upon the existence of such a by-law. The bank being prohibited from loaning moneys upon the security of its own shares of capital stock, it is difficult to understand upon what legal principle it could claim the right to an equitable lien. The Appellate Division, in an opinion which was concurred in by the majority of the justices of that court, thought that, as the question was one which arose under a Federal law, it should be governed in its determination by the decisions of the Supreme Federal Court and that the more recent ones had established a controlling doctrine that a contract made in contravention of any provision of the National Banking Act is not, in the absence of any declaration to that effect, void, or incapable of enforcement. Under the authority of certain cases in the United States Supreme Court, which are considered in the opinion, it was pointed out that the validity of certain transactions by national banks with their debtors was held to be a question only for the government to raise and that the effect of their violation of the statute was not to invalidate the transaction itself, but to subject them to charter proceedings on the part of the government. (*Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Whitney*, 103 ib. 99; *Thompson* v. *Bank*, 146 ib. 240.) Hence, it was deemed to follow that, in the present case, the bank's claim to be entitled to an equitable lien, though against a purchaser for value and in good faith of its shares in the market, must be allowed and any offense against the Banking Act involved must be left to governmental cognizance. I believe this conclusion to be fallacious and that the reasoning of the learned justices below is without regard to the

distinction which exists between those cases, in their facts and in the principle underlying their decision, and the earlier cases which construed the National Banking Acts and declared the doctrine that loans by banking associations to their stockholders do not give a lien to the bank upon their stock. (*Bank* v. *Lanier*, 11 Wall. 369; *Bullard* v. *Bank, supra.*) I am quite unable to agree in the view that these earlier cases have been overruled, or their doctrine refused credit, by the later cases which are relied upon for the defendant. If we assume the existence of a contract between the defendant bank and Levi, (and all we know of it is the testimony of the president of the defendant as to a conversation with Levi, in which he said the bank could consider the stock in his safe as collateral for his loans), it was executory in its nature as long as the stock remained in his possession and until it was in fact pledged to the bank by a delivery. Possession is of the essence of a pledge, in order to raise a privilege against third persons. (*Casey* v. *Cavaroc*, 96 U. S. 467; *Wilson* v. *Little*, 2 N. Y. 443.)

The defendant is asking the court to declare an equitable lien in its favor upon the shares of stock against a third person and, in that respect, the case is unlike those cases where the Federal court has held that a national bank might enforce a security which it had taken and held, notwithstanding the claim of the borrower that the transaction was in violation of some express provision of the law. The defendant never had possession of the stock and being under the prohibition of the Banking Act as to a transaction of a loan upon the security of its own shares of stock, it is compelled to take the position that, having dealt with Levi upon the faith that his ownership of the stock would be an added security for the performance of his promise to pay his loans and the certificates of stock carrying notice to persons dealing with Levi with respect to them that any transfer thereof would be subject to a lien in favor of the bank for any liability of the stockholder, it should be allowed an equitable lien thereon, superior to any right of the plaintiff thereto.

I should say that there was a marked difference between any such claim of the bank, which slights a provision of the Banking Law, intended to negative the right to a lien and to confer the valuable character of transferability upon national bank shares, in the public interests, and a claim which a borrower, or his representative, asserts against the right of a national bank, as his creditor, to realize its debt upon securities which have been held by it in pledge, though not within the class of those it was authorized to hold. The demand of the bank is to have the court declare an equitable lien upon its outstanding stock, by virtue of a by-law and of notice thereof on the certificates, when the Banking Act prohibited loans by it upon the security of its own shares and thereby rendered any by-law in contravention of the act, or any notice based thereon, wholly inoperative.

In *Bank* v. *Lanier*, (*supra*), the certificate of stock declared that the shares were transferable on the books of the bank *only on surrender of the certificates*. This limitation was imposed by the by-laws; which, further, provided that the stock of the bank should be assignable, subject to the provisions and restrictions of the 36th section of the act of 1863. Lanier and Handy purchased the stock of Culver, to whom it had been issued, and, their request for a transfer being refused, an action was brought against the bank to obtain pecuniary satisfaction. The bank defended upon the ground that it had a lien upon the stock for Culver's indebtedness to it, by virtue of the provisions of the 36th section of the act of 1863; which remained in operation, notwithstanding its repeal in 1864, by means of a by-law, adopted while the section was in force, declaring that the stock should be transferable subject to the provisions and restrictions of the act of Congress aforesaid. It appeared that the bank had sold and transferred the Culver shares upon its books to a third person and had applied the proceeds of the sale upon the indebtedness, before Culver assigned the certificates to Lanier and Handy. It was held that the provisions of the act of 1864 governed the conduct of banking associations, whether they were organized before

or after it became a law, and that the prohibition upon the making of loans on the security of the shares of their own capital stock applied. The object of the new act was stated to be, to make national banks subserve public purposes and to place shareholders, in their pecuniary dealings with the bank, on the same footing with other customers. It was a change in the policy of the government and as the restrictions of the act of 1863 fell, "so did that part of the bank's by-law relating to the subject fall with them." The judgment against the bank was affirmed.

In *Bullard* v. *The Bank*, (*supra*), the defendant was organized under the National Banking Act of 1864, and issued to one Clapp certain shares of its capital stock. He borrowed moneys from the bank on his notes and subsequently was adjudged a bankrupt. The plaintiff, as his trustee in bankruptcy, demanded a transfer of the stock to him as part of the bankrupt's assets; but the bank refused, claiming a lien upon it by force of its by-law, to the extent of the notes held by it. The action was then brought against the bank for refusing to allow the transfer asked for and the questions certified for determination were, whether a national bank could acquire a valid lien upon the shares of its stockholders by its articles, or by-laws, and whether the bank was entitled to hold the interest of Clapp in the stock by way of lien, or security, for all, or any of the notes. It was held, on the authority of the *Lanier Case* (*supra*), that these questions must be answered in the negative. Mr. Justice Strong, who delivered the opinion of the court, observed that the repeal of the 36th section of the act of 1863 by the substituted act of 1864 " was a manifestation of a purpose to withhold from banking associations a lien upon the stock of their debtors;" and that a by-law founded upon the 36th section of the act of 1863 was " a regulation inconsistent with the new Currency Act, *the policy of which was to permit no liens in favor of a bank upon the stock of its debtors.*" It was there argued for the bank that, though the act of Congress does not itself create a lien on a debtor's stock, (as did the act of 1863), it does by its fifth sec-

tion authorize the creation of such a lien by the articles of association, and by by-laws made under them. But it was answered that the words of the fifth section would bear no such meaning and that a by-law giving to the bank a lien upon its stock, as against indebted stockholders, ought not to be considered as one of those regulations of the business of the bank, or for the conduct of its affairs, which it was authorized to adopt, and that Congress evidently did not understand the section as extending to the subject of stock transfers; because in another part of the statute express provision was made for them.

The doctrine of *Lanier* v. *The Bank* was followed in this court, in *Conklin* v. *Second Nat. Bank*, (45 N. Y. 655); where the stock certificates contained the statement that the stock was not transferable "until all liabilities of the stockholder to the bank are paid." The rule of the *Lanier* case was held applicable to the transaction between the bank and the plaintiff's assignor, and it was held, against the claim of the bank to a lien upon the stock for moneys due from the stockholder, that "where the statute has prohibited all express agreements between a bank and its stockholders for a lien in favor of the former upon the stock of the latter, to secure any debts or liabilities of the stockholders to the bank, that no such lien can be created by a mere by-law of the bank is too clear to require discussion."

Do the cases which are cited and relied upon below as establishing a new doctrine apply to the present case and come to the support of the defendant's position? They are *Bank* v. *Matthews* (98 U. S. 621) and *Bank* v. *Whitney* (103 ib. 99). The National Banking Law authorizes a national banking association to loan money on personal security, and then declares that "it may purchase, hold and convey real estate for the following purposes, and no others: *First*, such as may be necessary for its immediate accommodation in the transaction of its business; *second*, such as shall be mortgaged to it in good faith by way of security for debts previously contracted; *third*, such as shall be conveyed to it in satisfac-

tion of debts previously contracted in the course of its dealings; *fourth,* such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts to it." In the case of *Bank* v. *Matthews,* Matthews and another person had given their joint note to a mercantile company and secured it by a deed of trust covering certain real property, executed by Matthews alone. Subsequently, the company assigned the note and deed of trust to the defendant bank to secure a loan made at the time. The loan was not paid and the bank directed the trustee to sell. In the state courts Matthews obtained a perpetual injunction against the sale, upon the ground that the loan was made upon real estate security, which was forbidden by the statute, and the deed of trust was, therefore, void. The case was taken by writ of error to the United States Supreme Court, where the decree of the state court was reversed and the cause remanded, with direction to the court below to dismiss the bill. It was held that the prohibitory clause of the National Banking Law did not vitiate real estate securities taken for loans, and that a disregard of the law only laid the association open to proceedings by the government. Justice SWAYNE remarked that "The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by congress." The guiding principle of the decision, however, was that it would be inequitable that a borrower should be rewarded, by giving success to his defense of the invalidity of the bank's act in taking a prohibited security for its loan, and that, as a punishment was prescribed for the violation of its charter, it was for the government to object. (See p. 629.)

In *Bank* v. *Whitney,* Whitney had executed a mortgage to the bank, which declared that it was made as collateral security for the payment of all notes which the bank held at the time against him and for his other indebtedness then due, or thereafter to become due. The question for determination was stated to be whether the mortgage was valid, so far as it applied to future advances to him. The question was regarded

as determined by the decision in *Bank* v. *Matthews*, which was reviewed in the opinion. It was observed that, "whatever objection there may be to it, as security for such advances, from the prohibitory provisions of the statute, the objection can only be urged by the government." In both these cases, the bank held the trust deed, or mortgage, and was endeavoring to enforce the security which it actually had taken from its debtor.

In *Bank* v. *Stewart*, (107 U. S. 676), the bank had taken, as security for a debt due from the stockholder, thirty shares of its own stock and, upon default in payment, *had sold the same and applied the proceeds in payment of the debt*. The action was brought to recover back the proceeds of sale, upon the ground that the bank had no right to take the security. The right to recover was denied, upon the ground that "the contract had been executed, the security sold and the proceeds applied to the payment of the debt," and that "both bank and borrower are in such case equally the objects of legal censure and they will be left by the courts where they have placed themselves." By suing for the proceeds of the sale, it was observed, the plaintiffs had affirmed the sale and the moneys loaned were an offset to the proceeds.

In *Thompson* v. *Bank*, (146 U. S. 240), the question arose upon the overcertification of a check, in violation of the United States statute; which made it "unlawful for any officer, etc., of any national bank to certify any check drawn upon said bank, unless the person or company drawing said check shall have on deposit in said bank, at the time such check is certified, an amount of money equal to the amount specified in such check." The statute, further, provided that any check so certified shall be a good and valid obligation against said bank; but that any officer, etc., violating the provisions of the act would subject the bank to proceedings on the part of the comptroller for the appointment of a receiver to wind up the affairs of the association. (13 Stat. 114, c. 106). The action was brought to recover the possession of certain railroad bonds, which the bank was charged with hav-

ing become illegally possessed of. The bank answered that the bonds had been pledged to it as collateral security for call loans, or advances, and that, the pledgors having failed to pay their indebtedness, *the bonds had been sold under an agreement* permitting the bank to do so upon the pledgor's default. The question was, whether, inasmuch as the defendant had certified checks without having on deposit an equivalent amount of money to meet them, it became a *bona fide* holder of the bonds. Upon the authority of the cases of *Bank* v. *Matthews* and *Bank* v. *Whitney*, it was held that "where the provisions of the National Banking Act prohibit certain acts by banks, or their officers, without imposing any penalty or forfeiture applicable to particular transactions *which have been executed*, their validity can be questioned only by the United States, and not by private parties." This clause from the opinion is quoted below in the present case, but I fail to perceive its precise applicability. The transaction, as in *Bank* v. *Stewart*, had been executed. *Matthews* v. *Bank* and *Bank* v. *Whitney*, only, of these cases, might be claimed to have a bearing upon the discussion; but their analogy is not apparent. I do not think that the United States Supreme Court intended to announce any new rule; for they simply applied a doctrine established as early as in the case of *Fleckner* v. *Bank*, (8 Wheaton, 339). That the *Matthews* and *Whitney* cases have not overruled the doctrine of the *Lanier* and *Bullard* cases, or of the *Conklin* case in this court, with respect to the enforcibility of such a by-law as the bank had in this case, is the general understanding of text writers and it has been so understood by courts. (Cook on Stockholders [3d ed.], sec. 533; Jones on Liens [2d ed.], § 384; Thompson's Commentary on the Law of Corporations [ed. of 1894], § 2319; Paine's Banking Laws, p. 533; American & English Enc. of Law, vol. 16, p. 201, §§ 14, 15; *Evansville National Bank* v. *Metropolitan National Bank*, 2 Bissell, 527; *Continental Bank* v. *Eliot Bank*, 7 Fed. Rep. 376; *New Orleans National Banking Assn.* v. *Wilts*, 10 Fed. Rep. 330; *Feckheimer* v. *Nat. Ex. Bank of Norfolk*, 79 Va. 80.)

I do not understand that, by virtue of any rule established in the *Matthews* and *Whitney* cases, a national banking association is enabled, by force of a by-law, or by a notice upon certificates, to restrict the transferability of its stock by imposing a lien thereon for any liability owing to it by its stockholder. How can it reserve to itself a right to a lien upon shares of its own stock, in contravention of the provisions of the National Banking Act, and become entitled to demand of the courts to enforce it as against a purchaser of the shares, whose title thereto is acquired *bona fide* and for value? If the defendant bank can successfully insist upon the right to an equitable lien, which the courts must enforce, in the face of the statutory prohibition, then I do not see that certificates of capital stock in national banking associations will possess that marketable character, which has been considered to give them a greater value as investments. The transferability of the stock is one of the most valuable franchises conferred by Congress upon banking associations, as it was said by Mr. Justice Davis in the *Lanier* case. The learned judge further remarked, in that case: "It is no less the interest of the shareholder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage." Nor can it be said that this plaintiff, when offered by Levi the certificates of stock as collateral security for a loan of money, was chargeable with notice of any lien of the bank thereon. The certificates were in his possession, and were delivered to the plaintiff, and the printed matter thereon was of no importance; inasmuch as the public law, under which the bank was organized, prohibited it from making any loan or discount on the security of the shares of its own capital stock. The plaintiff could not be bound by notice of something which the law prohibited.

The plaintiff, in the language of Justice Davis in the *Lanier* case, was "told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attor-

ney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know, that whoever in good faith buys the stock, and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification. goes further, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates." .

If the case had been one where the bank, not regarding the prohibition of the Banking Act, had taken from Levi his certificates of stock, as collateral security for the payment of any indebtedness which he had incurred, or might incur, and had realized upon them for application upon his debt, it might well be that it would not lie in his mouth, or any one claiming under him, to assert the illegality of the transaction. The case would then resemble more the cases of *Bank* v. *Matthews* or *Bank* v. *Stewart.* If the bank had violated the law, it laid itself open to proceedings on the part of the government and the courts might leave the parties where they were, and might decline to interfere to benefit the borrower to the prejudice of the stockholders and creditors.

There is no conflict between the *Lanier* and *Bullard* cases and the *Mattthews* and *Whitney* cases. Each class is distinct and its doctrine is controlling where the principle involved is the same. It is one thing if the contract has been executed and to avoid it would be to deplete the assets. of the bank to the amount represented by the contract; it is quite another thing, where the bank is seeking to create a lien upon an implied executory contract, or a security where it has none, and where it admits it has none, in the face of the statute, which provides that it shall not have such a lien, or take such a security.

The conclusion I reach is that the cases relied upon in the court. below, in the decision of this case, do not control it. They do not authorize the assertion of an equitable lien by the bank upon the shares of its own capital stock and the plaintiff, having acquired the certificates from Levi, the stock-

holder, for value and in good faith, was entitled to have the same absolutely transferred into its name upon the books of the corporation.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.