MAX SIGEL v. SECURITY STATE BANK OF WARROAD.[1]

October 13, 1916.

Nos. 19,900—(142)[2].

**Bank — sale of capital stock — statute construed.**

> 1. The time within which a bank is required to sell shares of its capital stock which have been taken as security under the authority conferred by section 6357, G. S. 1913, commences to run from the date the stock is so acquired and not from the due date of the secured obligation.

1Reported in 159 N. W. 567.        2October, 1916, term calendar.

Same — failure to sell — creditors or purchasers from owner.

    2. The failure of the bank to sell and dispose of the stock within the time fixed by the statute renders the security invalid as to creditors or purchasers subsequently acquiring rights thereto from or through the owner of the stock.

Same.

    3. The state has no interest in the subject matter; the taking of such a security is not an *ultra vires* act, and subsequent creditors may urge that the failure of the bank to dispose of the stock as required by law renders its claim invalid.

Action in the district court for Roseau county to recover $240 for conversion of two shares of stock of the defendant bank. Plaintiff's demurrer to paragraph 3 of the answer upon the ground that it did not state facts sufficient to constitute a defense was sustained, Watts, J. From the order sustaining the demurrer, defendant appealed. Affirmed.

*E. M. Heimbach* and *M. J. Hegland,* for appellant.

*Alexander Fosmark,* for respondent.

BROWN, C. J.

The Security State Bank of Warroad, defendant in the action, was duly organized under and pursuant to the general statutes of the state as a banking corporation. One Joseph Gibbons was a stockholder of the bank and held and owned two shares of stock therein. Gibbons was indebted to the plaintiff in this action in the sum of about $500 and plaintiff brought an action in the district court to recover thereon. Such proceedings were thereafter had in the action, that on November 15, 1915, judgment was duly rendered for plaintiff and against Gibbons for the full amount of plaintiff's claim with costs. Thereafter, under and pursuant to an execution duly issued on the judgment, the sheriff of the county duly levied upon the stock so owned by Gibbons and in due course of procedure the same was sold and struck off to plaintiff as the highest and best bidder at the sale. The levy and sale under the execution occurred in the month of December, 1915. Plaintiff thereafter demanded of the bank a transfer of the stock to him upon its books, which demand the bank refused on the claim that it held the stock as security for the payment of an indebtedness due from Gibbons, and that its claim was superior to any right acquired by plaintiff at the execution sale. Plain-

tiff then brought this action against the bank to recover the value of the stock on the theory that its refusal to transfer the same to him amounted to a conversion. Defendant interposed in defense that on May 5, 1915, Gibbons was indebted to the bank on a past-due obligation; that he was regarded as insolvent, and the bank was in danger of losing its claim; whereupon Gibbons made and delivered to the bank his promissory note for the sum of $300, the amount of the indebtedness then due and owing to the bank, and to secure the payment thereof assigned to the bank the stock in question. Defendant's rights are founded upon that assignment. The transaction was in good faith and without purpose to defraud creditors and solely for the protection of the bank from loss.

Plaintiff demurred to this defense and defendant appealed from an order sustaining it.

The only question presented is whether the assignment of the stock to the bank was, at the time plaintiff caused the same to be levied upon, valid and superior to the rights acquired by plaintiff as purchaser at the execution sale. This question is answered by the construction to be given to and the force and effect of section 6357, G. S. 1913, which reads as follows:

"It (the bank) shall make no loan or discount on the security of its own capital stock, nor be the purchaser or holder thereof unless necessary to prevent loss upon a debt previously contracted in good faith, and all stock so acquired shall be disposed of at public or private sale within six months after it is so acquired."

Defendant contends (1): That the period of six months within which the bank was by the statute required to sell and dispose of the stock did not commence to run until the maturity of the secured obligation; and (2) that the failure of the bank to comply with the statute in respect to a sale of the stock cannot be set up or invoked by plaintiff in defeat of the rights of the bank; that the question of the invalidity of the bank's title can only be raised by the state. Neither contention can be sustained.

The statute controlling the case is plain and unambiguous. It prohibits banking corporations from making loans or discounts upon their own stock as security, and from taking such stock as security except when necessary to prevent loss to the bank, and in that case its right to hold the stock so pledged is limited to the period of six months from the time

of the transaction. The purpose of the statute is too obvious to require discussion. It was enacted in the interest of sound and safe banking and to prevent the stockholders from impairing the capital of the bank by withdrawing the funds thereof without adequate security. And, while it permits the bank in the special case mentioned to take its own stock as security, the statute is specific that it cannot be held longer than six months. In the case at bar that period expired on November 5, unless as contended by counsel for defendant the bar of the statute does not commence to run in such cases until the due date of the secured obligation. We are clear, however, that such contention cannot be sustained. Such a construction would enable every bank to avoid the prohibition of the statute, at least to overcome the spirit and purpose thereof by postponing the day of payment of the secured debt so that the bank could hold the stock one, two or three years, or for such other time as the parties might agree upon. This would clearly be contrary to the intent of the legislature, and the requirement that such stock be sold within six months must be construed, at least as to creditors and those subsequently acquiring rights in or to the stock, in accordance with its express language. From this it follows that as to plaintiff, an execution creditor, defendant's right to hold the stock terminated long prior to the date of plaintiff's execution sale, and its rights are inferior to those thus acquired by plaintiff.

The second point made by defendant, namely, that the failure of the bank to comply with the statute can only be complained of by the state, does not require extended discussion. The situation is that of two creditors claiming the same fund in discharge of their respective claims. The state has no interest in that controversy; it is purely personal. The lien and claim of the bank was valid for the period of six months and no longer, and no sound reason can be assigned for holding that, though the bank failed to perfect its rights within the time fixed by the statute, yet the claim remains valid until the state shall step in and raise the objection. As suggested the state has no interest in the matter; the bank committed no *ultra vires* act in its failure to sell the stock and there exists no basis for interference by the state. This view is sustained by Buffalo German Ins. Co. v. Third Nat. Bank, 162 N. Y. 163, 56 N. E. 521, 48 L.R.A. 107. A different question would be presented in the

case of a fully executed *ultra vires* contract, as pointed out in the case cited. In the case at bar the contract between Gibbons and the bank was executory.

Judgment affirmed.