## Purchase of Bank Stock

BARD, Attorney General, January 6, 1939.—You desire to be informed whether the People's Bank, Steelton, Pa., acquired legally 300 shares of its capital stock and if the bank may hold them under the provisions of section 1011 of the Banking Code of May 15, 1933, P. L. 624, for a period of two years from date of acquisition. The stock was acquired in the following manner:

On December 17, 1937, the institution purchased 300 shares of its own capital stock from the Philadelphia National Bank, Philadelphia. The latter institution originally held the stock as collateral security on a loan of W. H. Nell, the former president of the Steelton bank. Your recent report showed Mr. Nell indebted to the Steelton bank, and an appraisal by an examiner showed a certain amount of this indebtedness as a loss. You further

state that, in view of the potential loss on this line of credit, the board of directors decided, after a conference by their attorney, Carl B. Shelley, with examiner Summers of your department, held in December, 1937, to purchase this stock in order that through the purchase and resale of this stock profits may be derived to reduce the loss in the Nell account to the extent of the anticipated profits.

The stock was purchased for $9,500. According to the appraisals made by an examiner of your department, it has a book value of approximately $21,000.

Under the law I must advise you that the stock was acquired illegally and the People's Bank, Steelton, Pa., has no right to retain this stock for a period of two years from date of acquisition.

Section 1011 of the Banking Code, supra, provides:

"Except as otherwise specifically provided in this act, a bank or a bank and trust company shall not grant any loan or discount on the security of shares of its own capital, nor be the purchaser or holder of any such shares for its own account, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith. Shares so purchased or acquired shall be disposed of within two years from the time of their purchase or acquisition, but the department may, upon application of a bank or a bank and trust company, grant to it in writing the power to hold such shares for a longer period."

There are various reasons for the prohibition against a bank dealing in its own stock. These institutions are created to subserve public purposes. Among these purposes is to keep the capital available for active use. If a bank could purchase its own stock, such capital would be withdrawn from its intended use. See Bank v. Lanier, 78 U. S. 369.

It is further manifest that such prohibition is to secure for the depositors the protection of the capital, and this protection would be seriously impaired by any pledge or

purchase of its own shares. However, in realization that in certain instances the purchase by a bank of its own shares would have the effect of saving an institution from loss, and in reality from a decrease of capital, the legislature has authorized such purchase where "necessary to prevent loss upon a debt previously contracted in good faith".

When the directors of the institution in the instant case went into the open market and purchased shares of the bank's own capital they did nothing to *prevent* a loss by the bank upon a debt previously contracted in good faith.

The bank received no additional pledge of stock to be attached to the Nell loans as collateral security to prevent or diminish the loss.

The bank did not purchase this stock from Nell or his nominee in such a manner as to give additional security and therefore prevent a further loss on the Nell loans.

What the bank did was to purchase 300 shares of its own capital in the market. For this stock it paid $9,500 of funds belonging to the bank, hoping that the money so invested would yield a profit when the stock is sold.

This is ultra vires and illegal. It amounts to speculation and does not come within the exception permitted in section 1011 of the Banking Code.

The transaction by which the Steelton bank purchased its own stock from the Philadelphia National Bank was a separate independent transaction and could have no connection whatever with the Nell loans, either before or after the loans were made, or before or after the bank stock was purchased.

At best it was an effort to speculate in its own stock, hoping to use the profits therefrom to *recoup* a loss already suffered, or to *offset* a loss anticipated, but in no way could it "*prevent* loss upon a debt previously contracted".

To hold otherwise would permit banks whenever they had suffered, or anticipated, a loss on a loan to go into the open market and purchase some of their own stock, whenever in the judgment of the directors a profit could be

made to recoup or offset the loss suffered in a loan. This is not the law.

Ninety-five hundred dollars of the bank's assets were applied in such a manner as to reduce by that amount the funds to which depositors may look for payment of their claims. That your department appraised the book value at $21,000 does not alter the situation.

It is the market value that is controlling in such a situation, and there is never any positive assurance that the market value of any stock will be higher or lower in the future than it has been in the past.

In being forced to arrive at the above conclusion, I am certain that the directors of the bank acted in good faith. You say they acted only after being advised to do so by their counsel and after conferring with the chief bank examiner of your department.

The authorization of, or acquiescence in, an illegal transaction by an examiner does not make it legal. However, the transaction by which the bank purchased this stock is not void but merely voidable and the act can only be invoked against the transaction by the State: Richards v. Integrity Trust Co., 317 Pa. 513 (1935). See discussion of this principle as applied to a similar statute pertaining to National banks in National Bank of Xenia v. Stewart, 107 U. S. 676.

Since the directors acted in good faith under the circumstances recited above the purchase of its own stock ultra vires does not render its subsequent sale of such stock to another unlawful, or the stock void in the hands of the purchaser: Lantry v. Wallace, 182 U. S. 536.

You are, therefore, advised that under the provisions of section 1011 of the Banking Code it was not legal for the People's Bank of Steelton, Pa., to acquire the 300 shares of stock in the manner it did nor will it be legal to hold it for a period of two years from the date of acquisition. You are further advised that it is your duty to notify the directors of the People's Bank, Steelton, Pa., to arrange for the disposition of these shares at a price not

less than was paid for them and to dispose of them as promptly as possible consistent with sufficient time to enable the bank to realize the fair market price of these shares of stock.