**BRIGHTWELL et al. v. FIRST NAT. BANK OF KISSIMMEE.**

**No. 9291.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 25, 1940.

G. B. Fishback, of Orlando, Fla., and M. S. McGregor, of DeLand, Fla., for appellants.

George Palmer Garrett, of Orlando, Fla., and Ellis F. Davis, of Kissimmee, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The appeal is from a summary judgment for the defendant in a suit brought by the executors of Hurbert Fleming against First National Bank of Kissimmee for damages as for a conversion because of the Bank's refusal to transfer on its books seventy-five shares of its stock. The case made by the petition supplemented by the uncontradicted affidavit of one of the executors is this: S. Y. Way in 1926 being the lessee of lands from Hurbert Fleming made a .bond of $10,000 to guarantee per-

formance of his obligations under the lease and secured it by delivering to Fleming the certificate for seventy-five shares of the Bank's stock standing in his name, annexed to an assignment which stated the stock was assigned as collateral security to the bond and lease, and provided: "Neither shall any transfer of this certificate be entered upon the books of the said Bank except in the event of a default. * * * In either of these contingencies, or otherwise if deemed necessary by the said Hurbert Fleming to protect his own interests, he may at his option have this certificate * * transferred so as to stand in his own name on the books of the Bank, but shall always be subject to redemption by said S. Y. Way. * * *" Fleming died in 1932, and the executors qualified. One of them exhibited these papers to the President of the Bank then, but asked no transfer. In January, 1938, default in the lease and bond for more than $10,000 having occurred, and the executors deeming transfer necessary to protect their interests, they presented the certificate and assignment and their letters testamentary to the Bank and requested transfer, which was refused. Again on March 20, 1939, a similar demand was made. A settlement with Way was then had by which he finally indorsed the certificate to the executors in the usual form, and the executors, presenting the indorsed certificate, again demanded transfer and were refused.

The Bank made a number of defenses, among them setting up that in 1931 Way became indebted to it, judgment was recovered against him, and on April 3, 1933, the sheriff sold these seventy-five shares of stock to the Bank for $500. Way has since claimed no interest in or rights under his stock certificate. The Bank transferred the shares to itself, and by May 6, 1933, had resold and reissued them to others, who have voted the same and received the dividends since. The executors lived in the State of Georgia, and it is not claimed that they knew anything of the sheriff's sale and its consequences until recently. On these facts one of the pleas of the Bank was, "The alleged conversion by said Bank of the said seventy-five shares of capital stock of said Bank, if it took place at all, occurred on the 3rd day of April, 1933, on which date the said Bank purchased said shares at the sheriff's sale as hereinbefore set out. Under the laws of the State of Florida the applicable statute of limitations allows three years from the date of an alleged conversion within which to bring suit."[1] This plea the court sustained, passing on no other, and dismissed the case.

We think the ruling erroneous. The plaintiffs are not suing for a conversion by the sheriff's sale in 1933. But the court, so it is argued, meant that Fleming's executors, whether rightly or wrongly, were deprived of their interest in the stock in 1933, and in 1938 and 1939 they had no property to be converted. But that is not the result of the sale. Fleming was a pledgee of the stock, having the certificate which represents it in his possession. He had a special property in it as pledgee, the general property subject to the pledge remaining in Way. 21 R.C.L., Pledge, §§ 14, 15. Way could have sold the stock, subject to the pledge, but since he was not in possession of the certificate, which by its terms had to be surrendered to obtain a transfer on the books, any purchaser would be charged with notice by not receiving the certificate of the rights of the pledgee who held it. The overshadowing importance of the possession of the certificate in the case of stock in a national bank is emphasized in First National Bank v. Lanier, 11 Wall. 369, 20 L.Ed. 172. Such possession, though the pledge be not entered on the bank's books, ordinarily protects the pledgee against one purchasing from the pledgor. 13 Am.Jur., Corporations, § 352.

We think it also protects the pledgee in case of a sale by the sheriff on an execution against the pledgor, the sale, if valid, passing only the general title of the pledgor subject to the pledge. By an old Florida statute, Comp.Genl.Laws, § 4509, "stock in corporations" is made "subject to levy and sale under execution", with no provision as to how levy is to be made. We suppose that under it the stock certificate as personal property would be seized to constitute a levy. In 1889 a more comprehensive statute was passed, Comp. Gen.Laws, §§ 4533–4539, providing for levy by exhibiting the execution to the officer of the corporation in charge of its books and informing him that the debtor's stock was levied on, and indorsing the levy upon the process. Section 4538 contains words which might be thought to mean that the

levy would be good against sales or pledges which had not been entered on the corporation's books, but the Supreme Court of Florida in Ploof Machinery Co. v. Fourth National Bank, 67 Fla. 36, 64 So. 360, construed the statute and held that a bona fide pledge of stock by delivering the certificate to the pledgee before the judgment was obtained, though not entered on the corporate books, was valid, and that actual ownership by the judgment debtor rather than apparent ownership on the company's books was the test of what might be levied on. The decision was reaffirmed in Alta-Cliff Co. v. Spurway, 113 Fla. 633, 152 So. 731.

This statute in terms applies only to shares of stock in corporations incorporated under the laws of Florida. It is argued that it does not authorize sale of shares of stock in national banks. Where a national bank is organized in Florida and its books and officers are there, it can conveniently be applied and was followed in the sale of Way's stock. The certificate was never seized. Assuming the applicability of the statute, we find in Section 4539 this provision: "The sheriff or other officer conducting said sale shall execute to the purchaser thereat a bill of sale of said shares, and such bill of sale shall vest in the purchaser all the title of the judgment debtor." Like sheriff's deeds generally, it passes no more. See 21 Am.Jur., Executions, §§ 280, 281. The pledgee's right, sustained and manifested by his possession, is a legal and not an equitable right. The rule of caveat emptor which prevails at sheriff's sales requires that the purchaser inform himself of the extent of the judgment debtor's title. So when pledged property was physically taken by the sheriff and sold to innocent purchasers the sale was held not to affect the pledge and the pledgee was allowed to recover possession. Reichenbach v. McKean, 95 Pa. 432. In the present case the certificate held in pledge was never seized, and the pledgee was in nowise interfered with or even notified. His right was not affected, and the Bank acquired Way's title only. Way rightly ceased to vote the stock and collect its dividends, and the successors in his title acquired his right to do so. The executors were not interfered with physically or legally. They had nothing to sue anybody about if they had known of the sale.

If the sheriff's sale was unauthorized and void it affected the interest in the stock of neither the executors nor Way. Way could, unless he had lost title in some other manner, make a final indorsement of the certificate in 1939 as he did, and vest full title in the pledgee.

We do not mean to adjudge finally the general ownership of the stock, nor whether in 1938 the bank should have evidenced the assignment in pledge on its books, or in 1939 should have issued a new certificate to the executors as full owners. Confining ourselves to what was ruled on in the district court, we hold only that the plea which was sustained ought not to have been.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.