Putnam J.
delivered the opinion of the Court. We think it cannot be maintained, that the right to the shares in the capital stock of this corporation cannot be transferred without a literal compliance with the by-laws. It is personal property. 3 Dane’s Abr. 108; 5 Dane’s Abr. 157. It might be conveyed by will; it might descend from an intestate to his heir. It may be assigned without deed, by a delivery of the certificate with an indorsement upon it for a valuable consideration. Quiner v. Marblehead Ins Co., 10 Mass. R. 476. And in such cases the legatee, heii or assignee would be entitled to have the transfer made in the books, and to a certificate of his property. A by-law which limits the transfer of the stock to *100 be made only at the office personally or by attorney, and with the assent of the president, would be in restraint of trade anu contrary to the general law of the Commonwealth, which per mits the right to personal property and incorporeal heredita ments to be transferred in various other ways. The purchase! or other person entitled should make his right known to the corporation, that it may be entered upon .their books ; to the end that they may have proper evidence to whom the dividends or profits should be paid.
The objection in the case at bar is not so strong as that which was made in Quiner v. Marblehead Soc. Ins. Co. above cited. By the act of incorporation of that company it was provided, that no transfer should be permitted to be valid, until all the instalments were paid in. That was construed not to extend to a transfer by a debtor to a creditor, but as only intended to prevent speculation in the scrip, before all the instalments were paid. And it was held that the original subscriber might lawfully transfer his right in the shares in payment of a debt, when only part of the instalments had been paid, and that the assignee would be entitled to a certificate of property upon payment of the residue.[1]
It is however contended, “ that no legal demand was made to change the legal title of the shares.”
All that could be required of the person demanding a transfer on the books, would be, to prove to the corporation his right to the property. In this case one of the joint assignees produced the assignment, with the original certificate of the former owners, and claimed for himself and his partner to be the purchasers for a valuable consideration. We think that was a sufficient notice of the assignment and request to have the transfer made upon the books of the corporation.
We have considered the case upon the validity of the assignment alone, and just as if there had not been a joint power to the plaintiffs from the assignors. And we are satisfied that the *101 assignment alone gave to the plaintiffs a right to the property, and by the operation of the law one partner might make a legal demand for both. In Lamb v. Durant, 12 Mass. R. 57, the chief justice well observed, that “ there seems scarcely an act contemplated to be done by merchants, which one copartner, acting for both, cannot do as effectually, to bind the whole copartnership, as if each member had acted.” [2]
This assignment would clearly be good as between the parties to it. Adams & Amory had granted all their right to the plaintiffs, and the defendants had notice of it before they attempted to obtain the property for themselves by legal process. We have said that the defendants had notice, because we are satisfied that the notice to the secretary was sufficient notice to the corporation. It is no answer that the president of the corporation was not at his post in the hours of business when the demand of the transfer was made. He should have been there, and the corporation is not entitled to use his neglect of duty in their defence. There cannot be any room to doubt, from the evidence in the case, that he might have given authenticity to the transfer, if he and the corporation had pleased, before they attached the shares for themselves. If that had been done, the plaintiffs would have had legal evidence added to their equitable right of property. Upon the production of that evidence and request, it became the duty of the corporation to transfer the shares to the plaintiffs ; and the corporation is bound to compensate them for the injury they have sustained.
The law supposes that the corporation promises or undertakes to do its duty, and subjects it to answer in a proper action for its defaults, whether of non-feasance or misfeasance. 3 Dane, 109; 5 Dane, 160; Bank of Columbia v. Patterson, 7 Cranch, 299. In pp. 305, 306, Mr. Justice Story, m an able, learned and concise statement of the powers, duties and liabilities of corporations, observed, that “all duties imposed on them by law, and all benefits conferred at their request, *102 raise implied promises, for the enforcement of which an action ma7 well lie.” The principle had been recognised in this State in the cases cited by Story J. and by the learned author of the Abridgement of American Law.[1]
The suggestion in regard to the action, viz. that it should be in the name of the assignors, cannot be sustained. ' We think that the holders of these shares had a right to transfer them so that the assignees would have a right of action in their own names for any injury which they might sustain touching this property. The chief justice, in Howe v. Starkweather, 17 Mass. R. 243, considered shares in incorporated companies not to be chattels, but to have more resemblance to choses in action, being merely evidence of property ; but he said also, “If, under an irregular sale, certificates of the shares were given to the purchaser, the case would be mere analogous to the sale of a chattel; for the delivery of the certificate would be like the delivery of the chattel, and the transfer might be considered complete.”[1] In the case at bar, the certificates of the shares were delivered to the plaintiffs, together with the assignment; so these shares, according to the case cited, would be more like chattels than choses in action.
It is contended that the title was not complete in the plain tiffs before the attachment which was made by the defendants, and that it was just as necessary that the transfer upon the books should be made with the assent of the president, as that a chattel should be delivered, to change the property. But the defendants are not in a situation to raise this objection. An attaching creditor without notice, would prevail against a vendee who had not perfected his title. Lanfear v. Sumner, 17 Mass. R. 112. But the defendants had notice of the transfer, and were required to give legal authenticity to it before they made their attachment. By their legal process, therefore, they *103 cannot defeat the right which the plaintiffs had acquired by the assignment. _
_ It is further contended, that Adams & Amory were indebted to the defendants, and therefore they were not obliged to admit a transfer of the shares until their debt was paid. We do not know on what ground that argument can rest, better than that which is suggested, that the assent of the president is to be required to prevent transfers which are injurious to the corporation, and that a power of assenting implies a power of refusing. No authority is cited in support of that position. In Bates v. New York Ins. Co., 3 Johns. Cas. 238, a similar claim was rejected. The company had refused to transfer unless the assignee would pay the debts due from the assignor, and the assignee who paid under those circumstances, was permitted to recover back the money, on the ground that the corporation had no right to require such a payment. A different rule, and as it seems to us a reasonable one, was adopted in regard to the dividends which were due when the corporation had notice of the assignment. The money then being in the hands of the company, was considered as appropriated towards a debt which was then actually due. But the company were held obliged to make the transfer on the day when the last instalment was paid, and the assignee was to have the dividends thereafter to be made.
It does not appear from the report in the .case at bar, that there were any dividends in the defendants’ hands at the time when the plaintiffs demanded the transfer; but we are of opinion, that whatever money they then had on hand should be considered as pledged towards any just debt which was then due from the assignors. Any surplus money then on hand would pass with the shares, in virtue of the assignment, and is to be added to the value of the shares.
But the defendants have taken the shares on their execution, and so appropriated the same to their own use. The only remaining consideration is, by what rule the damages shall be assessed.
For the defendants it is contended, on the authority of Gray v. Portland Bank, 3 Mass. R. 364, that the value of the shares at the time of the demand and refusal to transfer them, *104 should be the measure of damage. It has been contended foi the plaintiffs, that as the defendants have taken the shares for which the plaintiffs had paid, they should be held to pay as much, at the least, as they would be liable to pay for not transferring stock which had been loaned, or stock which had been paid for in advance; according to the rule adopted in New York, and stated in Clark v. Pinney, 7 Cowen, 681 and the cases there cited. Speaking for myself only, I should have been inclined to adopt that rule; which would have charged the defendants with any advance upon the value between the time of the demand and the trial. But all my brethren prefer the other rule, and on the ground that the defendants should not be held to pay more for this property than for goods which they had wrongfully converted to their own use. We decided in Kennedy v. Whitioell, 4 Pick. 466, that in trover for goods, the rule of damages in this Commonwealth is the value at the time of the conversion, notwithstanding the goods had been sold at an advanced price before the trial. And it is to be observed, that the certainty and uniformity of a rule may be of more public utility than one which is fluctuating, which may sometimes do more exact justice in a particular case. The Court is of opinion therefore, that the value of the shares at the time of the demand and refusal to transfer, is to be the measure of the damage.[1] Interest will be added from the time of the demand, on the amount found to be then due, in lieu of any dividends which may. have been subsequently declared.

 See Gilbert v. Manchester Iron Manuf. Co., 11 Wendell, 627; Sargent v. Essex Marine Railway, 9 Pick. 204; Boardman v. Osborn, in Essex, 1839 , Plymouth Bank v. Bank of Norfolk, 10 Pick. 454; Nesmith v. Washington Bank, 6 Pick. 324; Northrop v. Newtoion &c. Turnpike, 3 Connect. R. 544; Malborough Manuf. Co. v. Smith, 2 Connect, R. 579; Oxford Turnpike v. Runnel, 6 Connect. R. 552.

 See Egbert v. Woods, 3 Paige, 523; Pierpont v. Graham, 4 Wash. Che. C. R. 232; Harrison v. Sterry, 5 Cranch, 300; Cady v. Shepherd, ]] Pick. 400; Haven v. Hussey, 5 Paige, 30 ; Hewes v. Bayley, 20 Pick. 96; Morse v. Bellows, 7 N. Hamp. R 550.

 See Baptist Church v. Mulford, 3 Halsted, 182; North Whitehall v. South Whitehall, 3 Serg. & Rawle, 117; Chesapeake &c. Carnal Co. v. Knapp, 9 Peters, 541; Frankfort Bank v. Anderson, 3 A. K. Marshall, (Ken.) 1; Beverly v. Lincoln Gas and Coke Co., 6 Adolph. & Ellis, 829, and 33 Eng. Com. Law Rep. 222; 2 Kent, (3d ed.) 291, and cases cited in notes.

 See Angelí & Ames on Corp. 316; Long on Sales, (Rand’s edit.) 259. 260.

 See Balter v. Wheeler, 8 Wendell, 508; Whitehouse v. Mhinson, 3 Carr. & Payne, 344; Paries v. Boston, 15 Pick. 206; Stone v. Codman, 15 Pick. 300; Weld v. Oliver, 21 Pick. 565; Stevens v. Lyford, 7 N. Hamp. R. 360; Nelson v. Ford, 5 Hammond, 474; Chitty on Contr. (4th Am. ed.) 683 and note»