Thompson et al. vs. Robinson, Sheriff, et al.

1. SURETY: *When discharged by creditor's forbearance.  Not, by failing to issue execution.*

An agreement upon a valid consideration by a creditor, without consent of the surety, not to sue the principal debtor for a stated time, discha-ges the surety. But the payment of part of a debt by the principal, at or after the time it becomes due, is not a sufficient consideration to support an agreement for forbearance; and such an agreement founded

Thompson et al vs. Robinson, Sheriff, et al.

upon such a consideration, though carried out by the creditor, will not discharge the surety. Nor will mere delay of the creditor to issue execution on a judgment against the principal, discharge the surety.

2.  SAME : *Not discharged unless time of forbearance is fixed.*

An agreement for forbearance with the principal will not discharge the surety, unless the time of forbearance is fixed.

3.  SAME : *Notice to creditor to sue, how given; when he should attach.*

If, after the debt becomes due, the surety, either verbally or in writing, requests the creditor to sue the principal who is then solvent, and the creditor fail to do so, and the principal afterward become insolvent, the surety is thereby discharged.

But before a surety can claim a discharge for the omission or failure of the creditor to *attach the property* of the principal, he must show in his bill for discharge that there were legal grounds for attaching.

4.  ATTACHMENT OF BOATS : *Affidavit for.*

For the attachment of boats in the *state* courts, the same affidavit is required as in attachment of other property.

APPEAL from *Phillips* Circuit Court.

HON. J. N. CYPERT, Circuit Judge.

*Thweat and Trieber*, for appellants.

ENGLISH, C. J. The bill in this case was filed twelfth February, 1877, in the circuit court of Phillips county, by Andrew J. Thompson and Thomas H. Quarles, against H. B. Robinson, sheriff of said county.

The bill alleged, in substance, that on the —— day of ——, 1874, complainants, at the request of William H. Ross, became his sureties in a note to Jacks & Co., of Helena, for $——, payable —— day of ——, 187—.

That after the maturity of the note, Jacks & Co. brought suit upon it against complainants and Ross to the fall term 1875 of the Phillips circuit court. That process was duly served on complainants, and soon thereafter complainant Thompson, went to Thomas M. Jacks, of the firm of Jacks

& Co., and informed him that Ross, the principal in the note, was then somewhere on St. Francis river with his steamboat Rhoda, and would soon be down; and that complainants wished him, immediately on the arrival of Ross with his boat, to attach it, and by that means secure his debt and save the sureties harmless. That after this, Ross came to Helena with his boat, when complainant Thompson again went to Jacks, and informed him of the arrival of Ross with his steamboat, and repeated the request that he take immediate steps to secure his debt out of the property of Ross, stating at the same time that he, being a steamboat man, was liable at any time to remove his property beyond reach of process of the courts of this state, or that his property, being a steamboat, was liable to the losses incident to water crafts of like character; and that he and his co-security wished to be released from liability on account of said note, and that if he (Jacks) failed to secure himself out of the property of Ross while it was within reach of the law, complainants would not be further responsible on account of said note. That Jacks & Co. at once applied to Ross for the payment of said note, and threatened him with attachment in case of further delay, when Ross agreed to pay Jacks & Co. $150 on account of said note, if they would extend the time of payment on the balance. That said payment and extension were agreed to by Jacks & Co. upon condition that Ross, who had not been served with process in the suit instituted by them against him and complainants above mentioned, should enter his appearance to said suit, and consent that judgment should go in their favor against him and complainants. That in accordance with said agreement, and in consummation thereof, Ross paid Jacks

& Co. said $150 on the nineteenth of November, 1875, and directed his attorneys to enter his appearance to said suit, then pending against him in said circuit court, and allow judgment to go against him for the balance due on said note; all of which was done and judgment entered in conformity with said agreement, on the twentieth of November, 1875.

That complainants had no knowledge or information whatever of said agreement so made between Jacks & Co. and Ross, and the extension of time for the payment of said note, and gave no consent whatever that further time be given thereon.

That after the request and notification to Jacks, who was a member of the firm of Jacks & Co., complainants relied upon them to make their money out of the property of Ross, and relieve complainants as sureties on said note, and did not even know of the judgment against them until long subsequently; and did not know until within the last few days that Ross had appeared, by counsel or otherwise, and consented to waive service and enter his appearance, and suffer judgment to go against him or them.

That complainant Thompson met Ross shortly after his arrival at Helena, with his steamboat, as aforesaid, and mentioned the fact to him that complainants were sued on account of his note to Jacks & Co., and requested him to arrange the payment of the note with Jacks & Co., and save them from loss, which he agreed to do ; and shortly afterward told complainant Thompson, that he had adjusted the matter so that they would not be troubled further about it. That, relying upon the statement of Ross, they gave no further thought about the matter, sup-

posing that Jacks & Co. had, according to their request, secured themselves out of the property of Ross, or received payment of the amount due.

That on the ———— day of ————, 1877, Jacks & Co. caused execution to be issued upon said judgment against complainants and Ross, and placed in the hands of defendant Robinson, as sheriff, etc., who had levied on the property of complainants, and would sell the same on the ———— day of February, 1877, to satisfy the judgment, unless restrained.

That from the time the judgment was rendered, twentieth November, 1875, to about the first of February, 1876, Ross continued to run his steamboat in the St. Francis river, and to the city of Helena, where Jacks & Co. resided and did business, and which was the home port of said steamboat, and while the boat, which was still held and owned by Ross, was lying at Helena, a violent storm arose, and broke the boat loose from her moorings, and drove her across the river to the Mississippi shore, where she sank and became a total loss to Ross, her owner; and yet, during all the time, from the date of said judgment until the destruction of said boat, Jacks & Co. made no effort to satisfy the judgment, by subjecting said boat to sale on execution, or otherwise, although liable under the laws of the state.

That, by the loss and destruction of said boat, Ross became utterly insolvent, and, shortly after, became a non-resident of the state, leaving no property out of which said judgment could be satisfied; and, if complainants were compelled to pay the judgment, it would be a total loss to them, and contrary to equity, etc.

Prayer, that Robinson be temporarily enjoined from

selling the goods of complainants, etc, and that, upon final hearing, the execution of the judgment be perpetually enjoined as to them.

On the filing of the bill, an interlocutory injunction was granted.

Although complainants sought to enjoin a judgment in favor of Jacks & Co. they were not made defendants, nor was it alleged who composed the firm. other than Jacks.

By leave of the court, however, Jacks was made a defendant, and answered the bill.

He states that on the third of July, 1874, Ross and complainants executed to Jacks & Co., their joint note for $342, payable at four months, with interest after due at $3\frac{1}{2}$ per cent. per month, for money advanced to Ross, and, though complainants were sureties for Ross, all· of the makers of the notes were principals as between Jacks & Co. and them.

Admits that Jacks & Co. brought suit on the note to the fall term, 1875, of the circuit court of Phillips county, against Ross and complainants. and process was served on the latter. That, after the institution of the suit, complainant, Thompson, informed him that Ross had his boat in the St. Francis river, and desired him to attach said boat, upon her arrival at Helena, which he declined to do, because he was unwilling to make the affidavit, and give the bond, and incur the liability for costs of taking care of a steamboat under an attachment.

Admits that, after the institution of said suit, Ross came to Helena with his boat, and Thompson may have again spoken to him, but states that, in all their conversations, Thompson desired him to sue Ross, and not complainants, and he repeatedly told him that, if he desired the collection of the debt pressed, he would so instruct his attorneys.

That Thompson did not wish a judgment against himself, and never notified respondent or any member of the firm of Jacks & Co., in writing or otherwise, to institute suit on said notes, or press the collection of the judgment, which was recovered thereon. Denies that Jacks & Co. applied to Ross for payment of said debt, as alleged. Admits that Ross did pay to Jacks & Co. $150, and did enter his appearance in said cause; but denies that said sum of money was paid, or said appearance entered, upon any agreement to extend time of payment on any part of the balance of said debt. Avers that he always supposed said payment was made, and said appearance entered, at the instance of complainants, or one of them. Did not know what directions Ross gave to his attorneys. Respondent repeatedly told Thompson that when he desired said note to be pressed to a collection, he would do so. But Thompson would not say that he wished it to be done, because respondent told him he would release no one, and Thompson did not wish suit pressed for fear he would have to pay the debt, and would not say to press it. Admits the destruction of the boat of Ross, but did not remember at what time. Denies that complainants ever notified him to make his money out of Ross, or ever made any request of him to that effect, except that Thompson wanted the steamboat attached, as before stated. Avers that he always informed Thompson that he was ready to proceed by suit when he said so, and would do it; and all the indulgence was given on account of Thompson. Denies that he ever agreed with Ross for any consideration, or without consideration, to extend time of payment.

Admits the issuance of the execution, as alleged; that Ross was a non-resident, but did not know whether he was

solvent or insolvent, though he knew of no property in the state belonging to him subject to execution.

The answer also contained a general demurrer to the bill.

It appears that the suit at law upon the note was brought in the name of Thomas M. Jacks and L. A. Fitzpatrick, partners, under the firm name of Jacks & Co., and that judgment was rendered against Ross and complainants, twentieth November, 1875, for $235.35, to bear interest at 6 per cent.

The cause was heard upon the pleadings and depositions, and the temporary injunction was dissolved, and the complaint dismissed for want of equity, and complainants appealed to this court.

We gather from the allegations of the bill that appellants relied upon these grounds for equitable relief:

1. The extension of time of payment by Jacks & Co., the creditors, to Ross, the principal debtor.

2. The refusal of Jacks & Co. to attach the steamboat of Ross.

3. The neglect of Jacks & Co. to take out execution upon the judgment, and cause the boat to be levied upon and sold before it was destroyed.

Material facts proven by the depositions may be stated in considering the several grounds of relief relied on:

I. The bill alleges, in substance, that after the note was due, and suit brought upon it, Jacks & Co., the creditors, agreed with Ross, the principal debtor, to extend time of payment, upon the payment of $150 on the debt. No definite period of forbearance is alleged as having be e agreed on.

Appellants failed to prove this agreement as alleged, and the depositions read on the hearing by appellees, conduce

to prove that, at the time Ross paid Jacks the $150 on the note, the latter refused to extend the time of payment without the consent of the sureties.

But if the agreement, as alleged, had been proven, it would not have discharged appellants.

An agreement upon a valid consideration by a creditor without the consent of the surety, not to sue the principal debtor for a stated time, discharges the surety. Such an agreement ties up the hands of the creditor, because, if he breaks it, he may be sued for damages.

Caldwell, ex'r, v. McVicar, 9 Ark., 418; Arrington v. Washington, 14 Ark., 218.

But the payment of part of a debt by the principal, at the time or after it becomes due, is not a sufficient consideration to support an agreement for forbearance; and an agreement for forbearance founded upon such consideration, even though carried out by the creditor, will not discharge the surety. In such cases, no benefit is received by the creditor but what he was entitled to under the original contract, and the debtor has parted with nothing but what he was already bound to pay.

Brant on Suretyship, etc., sec. 306; King & Houston v. State Bank, 9 Ark., 185; Stone & McDonald v. State Bank, 8 ib., 145; Wright vs. Yell et al, 13 ib., 506.

In order that an agreement between the creditor and principal debtor, extending the time of payment, shall have the effect of discharging the surety, the extension must be for a definite period. It makes no difference for how short a period the time is extended, but that period must be fixed, otherwise the hands of the creditor are not tied, and he may proceed at any time. Brant on Suretyship, etc., sec. 298.

II. Jacks admits, in his answer, that after he had

Thompson et al. vs. Robinson, Sheriff, et al.

brought an ordinary suit at law upon the note, and after appellants had been served with process, but Ross, the principal debtor, had not, appellant Thompson requested him to attach the steamboat of Ross, which he declined to do, because he was unwilling to make affidavit, give bond, and incur liability for costs of taking care of the boat under attachment. He also admits that the boat was afterwards destroyed, and that Ross became a non-resident, and perhaps insolvent.

This was not a notice in writing to sue, under the statute. *Gantt's Dig., secs. 5696–8.*

If, after the debt was due, the surety, verbally, or in writing, request the creditor to sue the principal, who is then solvent, and the creditor fail to do so, and the principal afterwards becomes insolvent, the surety is thereby discharged. *Hempstead et al. v. Watkins, ad'r., 6 Ark., 352.*

In *Hancock v. Bryant and Hunt, 2 Yerger, 476,* where the surety gave notice to the creditor to sue the principal, it was held to be no excuse for not suing, that the principal lived in an adjoining state, when he had property in Tennessee, where the notice to sue was given, which might have been subjected to the payment of the debt.

But if the creditor may be required to resort to the extraordinary remedy of attaching the property of the principal, the surety ought certainly to be required, in a bill for discharge to show that there were legal grounds for suing out the attachment.

The note was for money loaned by Jacks & Co. to Ross, and was an ordinary personal debt.

It is not shown that Jacks & Co. had any lien upon the boat for the debt, or that it was a maritime contract, that might have been enforced in the federal court by admiralty proceedings. *The Belfast, 7 Wallace, 637.*

In order to attach the boat as the property of Ross, in the state court, under the attachment statute (*The Hine v. Trevor, 4 Wallace, 571*), it would have been necessary for Jacks & Co., or one of them, or some person for them, to make and file an affidavit that Ross was a non-resident of the state, or had been absent therefrom four months, or had departed from the state with intent to defraud his creditors, or had left the county of his residence to avoid service of a summons, or so concealed himself that a summons could not be served upon him, or had removed, or was about to remove, or dispose of his property to defraud his creditors, etc.   *Gantt's Dig., sec. 388.*

The bill fails to allege that any ground of attachment existed, or that Jacks & Co. might legally have attached the boat, at the time they were requested to do so.

III.   The judgment was rendered against appellants and Ross, on the law side of the court, twentieth November, 1875, and the boat was not destroyed until first of February, 1876, during which time the bill alleges that Jacks & Co. neglected to sue out execution upon the judgment, and cause the boat to be levied on.  No notice to do so is alleged or proved.

Mere delay to take out execution, like neglect to sue, without notice to do so, will not discharge the surety. *Brant, sec. 387, etc.*

It was not the fault of Jacks & Co. that appellants did not know that judgment had been rendered against them and Ross.   They were served with process in the suit, and it was their duty to see whether judgment was rendered against them or not.   Nor was it the fault of Jacks & Co. that Ross put appellants off their guard by assuring them that he had adjusted the matter with Jacks & Co., so that

they would not be troubled further about it. Appellants did not allege, or prove, that Jacks & Co. gave them, or either of them, any such assurance.

Decree affirmed.