Bankers Trust Company of St. Louis *v*. McCloy.

Opinion delivered July 7, 1913.

1. Corporations—lien on stock.—Under Kirby's Digest, § 853, which provides that stock of a corporation shall be transferred only on the books of the company and that it shall have a lien on the stock of its members for any debt due from them to it, *held* when a banking corporation takes over the assets and assumes the liabilities of other banks, a resolution of the banking corporation that in case of loss, the same will be charged to the respective banks, and dividends on the stock retained to reimburse it, passed prior to the issuance of stock, creates a mere conditional liability and not a debt to the corporation. (Page 166.)

2. Corporations—lien on stock.—A lien on the stock of a corporation in favor of the latter, as between the corporation, its shareholders, and a purchaser with notice, may be created by by-law, or by common custom in such dealings. (Page 167.)

3. Corporations—lien on stock.—The purchaser of shares of stock is chargable with notice of liens created under statutes or charter, but not those arising under the by-laws of the corporation, or under the custom of dealing between the corporation and its shareholders. (Page 168.)

4. Corporations—stock—negotiability.—Shares of stock in a corporation do not constitute negotiable paper within the law merchant, but are treated as *prima facie* evidence of unencumbered ownership of the holder thereof named in the certificate and upon the books of the company, and a purchaser of stock endorsed and assigned with power of attorney to transfer, is entitled to have the shares recorded on the books of the company in his name. (Page 169.)

5. Corporations—purchase of stock—remedy.—The purchaser of corporation stock, not chargable with notice of any lien thereon, is

entitled, as a matter of right, to have the stock transferred on the books of the company and new certificates therefor issued, and he may compel such transfer, or recover damages for failure to make the transfer. (Page 171.)

6. CORPORATIONS—SALE OF STOCK—WARRANTY.—Where a purchaser of stock in a corporation procured unencumbered stock, but voluntarily paid an unenforceable demand by the corporation against the stock, he can not recover the sum from the seller, on an implied warranty. (Page 171.)

Appeal from Drew Circuit Court; *H. W. Wells,* Judge; reversed.

*J. C. Gillison,* for appellant.

1. The stockholders' resolution, if regularly adopted, would not create, in law, any lien on the stock. Kirby's Dig., § 853. Nor was there any statutory lien. A contingent claim is not a ''debt due.'' *Ib.;* 4 Thompson on Corporations, § 4000, p. 556.

2. There was no lien at common law. If any existed, it must be statutory. ''Debt'' means a sum *certain.* 1 Mass. 471; 31 N. J. Eq. 554. It never means a contingent liability. 37 Cal. 524; 54 Ala. 639; 53 N. J. Eq. 633; 98 Pa. 308-402; 31 Mich. 76; 2 Hill (N. Y.) 220; 3 Seld. 124; 17 N. Y. 458; 63 Fed. 707-722; 45 Minn. 238; 17 Wis. 181; 57 Am. Dec. 542; 17 Mich. 511; 14 Vt. 14; 94 N. W. 191; 58 Oh. St. 280; 10 Pa. St. 120; 3 Watts (Pa.) 394; 60 Ark. 198; 66 *Id.* 327; 68 *Id.* 235.

3. A resolution can not create a lien. 52 Mo. 377; 162 N. Y. 163; Helliwell on Stock, etc., 146-7-468, § 170, p. 309.

4. If there was a lien, it was waived. 4 Thompson on Corp., § 4004, p. 565 (1909 ed.); Cook on Corp., vol. 2, § 531 (4 ed.); 15 Mo. App. 55; 88 Mo. 567; 44 Minn. 183.

5. A purchaser without notice acquires the legal title. Helliwell on Stocks, etc., pp. 303, 304, 175-6, pp. 320-1-3-4; 4 Thompson on Corp., § 4007; 52 Pa. St. 280.

6. The assignment gave plaintiff title, and the refusal of the bank to reissue did not impair the title. 13 Otto. 800; 11 Wall. 369; 91 U. S. 65; 2 Conn. 777; 11 Wend. 628; 22 *Id.* 362; 8 Pick. 90.

7.   If there was any lien it was statutory, and a purchaser is bound to take notice of a statutory lien.   There was no express warranty, and no warranty as to quality or fitness is implied when the defects are known to the buyer, or he has knowledge sufficient to put him on inquiry.   35 Cyc. ¶ 9, p. 409; 2 Cook on Corp., § 532 (4 ed.).   In the sale of personal property, there is no implied warranty except as to title.   45 Ark. 284.

8.   There is no proof of damages, and the burden was on the party claiming damage.   2 Wigmore on Ev., § 1362; 7 Cyc. 457-8.

*Williamson & Williamson,* for appellee.

1.   The statutes of this State give the bank a lien on stock for all debts due it.   Sand. & Hill's Dig., § 1342; 66 Ark. 327, 331.   Stock must be transferred on the books of the company.   66 Ark. 331.

2.   Shares of stock are not negotiable instruments. Whoever buys takes subject to the equities and burdens which attend them.   10 Cyc. 589.   The statutes and by-laws must be complied with.   88 Ark. 113; Kirby's Dig., § 853; 53 Ark. 298.

3.   The statute of frauds must be pleaded.   71 Ark. 304.

4.   There was no waiver.

5.   A mere assignment does not convey title.   The statute and by-law must be complied with.   88 Ark. 113.

6.   There was an implied warranty of title that the stock was clear of all incumbrances.   24 Ark. 223; 45 *Id.* 284; *Ib.* 288; 53 *Id.* 295; 19 *Id.* 447-460; 10 A. & E. An. Cas. 168, note; 35 Cyc. 394; 46 Minn. 413; 165 N. Y. 108; Burdick on Sales, 92.

7.   If the seller knew at the time of the sale that he had no title, the buyer has an action for deceit.   4 Ark. 467.

8.   As to the damages, the findings will not be disturbed.   96 Ark. 606; 92 *Id.* 41; 81 *Id.* 108; 90 *Id.* 375; 94 *Id.* 532.

McCULLOCH, C. J.   Appellees, J. J. McCloy and V. J. Trotter, instituted this action in the circuit court of

Drew County against appellant, Bankers Trust Company of St. Louis, a foreign corporation, to recover damages, laid in the sum of $2,478, on account of the breach of an alleged warranty in the sale of certain shares of the capital stock of the Chicot Bank & Trust Company, a banking corporation domiciled and doing business at Lake Village, Chicot County, Arkansas.

The case was tried before the circuit court sitting as a jury, and the trial resulted in a judgment in favor of appellees for the recovery of the amount of damages claimed by them.

Appellant owned 160 shares of the capital stock of the Chicot Bank & Trust Company, of the face value of $100 per share.. Negotiations between the parties looking to a sale of the stock were begun in February, 1910, which resulted in a sale of said shares by appellant to appellees on March 4, 1910, at the price of $109 per share. The negotiations were conducted and consummated through written correspondence and telephone conversations, appellees residing at Monticello, Arkansas, and appellant acting through its officers from the St. Louis office.

There was no express warranty of the stock, either as to the title or value, and appellees rely for recovery upon an implied warranty against encumbrances, and they adduced testimony tending to show that the stock was encumbered at the time of the sale to the extent of the amount named in the complaint.

The Chicot Bank & Trust Company was organized in August, 1907, and two other banking institutions doing business in Lake Village, namely, the Chicot Bank and the Bank of Lake Village, were at the time of its organization merged into it. The assets of the two old banking institutions were taken over by the new one and the liabilities thereof assumed and stock in the new institution was issued to the stockholders of the two old ones of the estimated face value of said assets.

At the first meeting of stockholders upon the organization of the Chicot Bank & Trust Company a resolution

was unanimously adopted and placed upon the records of the company reciting the conditions upon which the assets of the Chicot Bank and the Bank of Lake Village were to be taken over and the liabilities thereof assumed and stock issued in payment thereof, the estimated value of the assets of the Chicot Bank being $25,500 and of the Bank of Lake Village $20,247.50. The resolutions continued as follows:

"Said stock when issued shall be charged at par to the accounts of said banks on the books of said company, provided that the issue of said stock shall not exceed 97 per cent standing to the credit of said respective banks until all the bills receivable, loans, overdrafts and other indebtedness turned in by said banks as assets as shown by said exhibits have been collected, and should there be any loss on any such items, such loss shall be charged to said respective banks against said balances of accounts so retained, together with any extra expense incurred in collecting any of said items so turned in as assets or in the attempt of collection against said accounts so retained shall also be charged and any current expenses or current liabilities that said company may be required to pay and not shown on above exhibits and which said respective banks should have paid but have been overlooked; provided, further, that should said accounts so retained not be sufficient to cover all of above items that may be charged as provided, then this company is hereby authorized and empowered to, at any time, retain a sufficient amount of dividend declared and ordered paid on the aforementioned issue of stock to reimburse it for any and all losses and expenses incurred in the collection of the assets of either bank (provided that the real estate and furniture and fixture accounts turned in by both banks are not included in this provision, but same are accepted at the book and agreed value, and any loss sustained on same must be borne by said company), said balances of said accounts so to the credit of either bank shall be under the exclusive control of said company and may be retained by it until all of the bills receivable,

loans and other items shown on said exhibits are collected and satisfied to its satisfaction. Any balances remaining when said company finally decides to close said accounts may be paid to said banks in paid-up stock (at par) of this company or in cash as its board of directors may direct."

The stock sold and transferred by appellant to appellees was a part of the stock issued to the stockholders of the Bank of Lake Village in payment of said estimated value of the assets of that institution. Of that stock there were 147 shares issued to J. E. Franklin, who appears to have been one of the officers of appellant corporation, and who was a stockholder of the Bank of Lake Village. This stock, together with thirteen shares issued to other stockholders of the Bank of Lake Village, constituted the 160 shares sold and transferred by appellant to appellees.

The stock certificates were transferred in writing by appellant to appellees, but on the presentation of same for transfer upon the books of the company and issuance of new stock, the officers of the Chicot Bank & Trust Company called attention to the fact that the stock was encumbered with liability for any loss which might finally accrue upon the assumed liabilities and assets of the Bank of Lake Village, and said officers declined to issue new stock except upon the recognition and assumption by appellees of such liability. Appellees protested against any such liability, but finally accepted, under protest, the issuance of said shares of stock thus encumbered with the asserted liability.

Subsequently the Chicot Bank & Trust Company made demand upon appellees for the amount ascertained to be the *pro rata* part of such encumbrance charged against said stock, and the same was paid by appellees, the amount so paid, together with amounts deducted from dividends on the stock, aggregating the amount claimed by appellees in their complaint.

Appellees had no notice of the existence of the aforementioned stockholder's resolution when they purchased

the stock from appellant and paid for it, nor did they have any notice that the Chicot Bank & Trust Company asserted any lien against the stock. The first information on the subject which came to them was when they presented the assigned shares for transfer on the books of the company.

It is not contended that there existed statutory lien on the stock in favor of the Chicot Bank & Trust Company, and it is clear that none existed.

The statutes of this State provide that the stock of every such corporation shall ''be transferred only on the books of such corporation in such form as the directors shall prescribe; and such corporation shall at all times have a lien upon all the stock or property of its members invested therein for all debts due from them to such corporation.'' Kirby's Digest, § 853.

There were no ''debts due'' to the corporation from appellant as shareholder when the shares were assigned.

The aforementioned resolution did not attempt to create a liability of the shareholders. It merely provided that, should there be any loss, the same should ''be charged to said respective banks'' and that the company was ''authorized and empowered to, at any time, retain a sufficient amount of dividends declared and ordered paid on the aforementioned issue of stock to reimburse it for any and all losses and expenses incurred in the collection of the assets of either bank.'' It created an encumbrance against the stock itself which ''followed the stock,'' so to speak. That encumbrance was a conditional liability and did not, in any sense, constitute a ''debt due'' to the corporation within the meaning of the statute. See authorities cited in appellant's brief.

There existed originally at common law no lien in favor of a corporation on its shares of stock for debts due from stockholders in the absence of statutory or charter authority. No lien could be created by by-law or resolution or by common custom, for the policy was to discourage secret liens which might hamper the transfer of shares of stock. 2 Cook on Corporations, § 521;

4 Thompson on Corporations, § 4000. But that policy was even at common law somewhat relaxed and the rule was recognized that such a lien might, as between the corporation and its shareholders and a purchaser with notice, be created by by-law, and even by common custom in such dealings. *Child* v. *Hudson's Bay Co.*, 2 P. Wms. 207. That is the law now, we think, according to the weight of American authority. 4 Thompson on Corporations, § § 4003-5; 2 Cook on Corporations, § 522; *Jennings* v. *Bank*, 79 Cal. 323; *Vansands* v. *Middlesex Co. Bank*, 26 Conn. 144; *Reading Trust Co.* v. *Reading Iron Works*, 137 Pa. St. 282; *Des Moines Nat. Bank* v. *Warren Co. Bank*, 97 Iowa, 204.

The distinction between liens created by statute or charter and those created by the by-laws of a corporation is pointed out in an opinion of the Supreme Court of Mississippi as follows:

"It is well settled that at common law a corporation has no lien on the stock of its shareholders for an indebtedness to it. Such liens, when they exist, result either from a provision in the charter to that effect, or from a by-law enacted by the corporation in pursuance of authority conferred by the charter. Usually the lien, when it exists at all, is given by the charter, which, being a public law, as well as the act by which the corporation is created, is notice to all persons dealing with the company. *Union Bank* v. *Laird*, 2 Wheat. 390. The lien may, however, be created by a by-law, as was held at an early day by Lord Chancellor Macclesfield in *Child* v. *Hudson Bay Co.*, 2 P. Wms. 207, and very generally since. When thus created, there seems to be some diversity of opinion as to its effect against an innocent purchaser of the stock for value and without notice of the lien. * * * This difference is more apparent than real, for it seems to be well recognized that a by-law has no extra-corporate force, and is only binding on those dealing with the corporation who have notice of it, or who deal with it under such circumstances that they are bound to take notice of it. A solution of the question will be found in

the right determination of the categories in which notice is inferred. By-laws of private corporations are not in the nature of legislative enactments, so far as third persons are concerned. They are mere regulations of the corporations for the control and management of its own affairs. They are self-imposed rules, resulting from an agreement or contract between the corporation and its members to conduct the corporate business in a particular way. They are not intended to interfere in the least with the rights and privileges of others who do not subject themselves to their influence. It may be said with truth, therefore, that no person not a member of the corporation can be affected in any of his rights by a corporate by-law of which he has no notice." *Bank of Holly Springs* v. *Pinson,* 58 Miss. 421.

The purchaser of shares of stock is chargeable with notice of liens created under statutes or charter, but not those arising under the by-laws of the corporation or under the custom of dealing between the corporation and its shareholders. The reason for this rule can not be stated in language clearer than that quoted above from the opinion of the Supreme Court of Mississippi. And that rule is sustained by the great weight of authority. 2 Cook on Corporations, § § 522 and 525; 4 Thompson on Corporations, § 4007; Helliwell on Stock and Stockholders, § § 47 and 164; *Bank of Holly Springs* v. *Pinson, supra; Bank of Culloden* v. *Bank of Forsyth,* 120 Ga. 575; *Des Moines Nat. Bank* v. *Warren Co. Bank, supra; Driscoll* v. *Mfg. Co.,* 59 N. Y. 96; *Buffalo German Ins. Co.* v. *Third Nat. Bank,* 162 N. Y. 163; *Anglo-Californian Bank* v. *Grangers' Bank,* 63 Cal. 359; *Just* v. *State Sav. Bank,* 132 Mich. 600; *Bryon* v. *Carter,* 22 La. Ann. 98; *Sargent* v. *Franklin Ins. Co.,* 25 Mass. 90; *Planters' Mut. Ins. Co.* v. *Selma Sav. Bank,* 63 Ala. 585; *Brinkerhoff-Farris Co.* v. *Home Lumber Co.,* 118 Mo. 447.

"Where the right to a lien rests on a by-law merely, it can not," says Mr. Thompson in his work on Corporations, "be enforced against a *bona fide* transferee of the shares who had no knowledge of its existence. A by-law

does not ordinarily impart notice. The policy of the law is against secret liens in respect of personal property and where the corporation establishes a by-law reserving a lien upon its shares for any debt due it by the holder of such shares it owes it to the public to make known that fact by printing a notice of it on the certificate of shares or by some other appropriate means." Sec. 4007.

The same author (section 4003) states the rule, and cites numerous authorities in support thereof, that "a by-law of this character would not be valid as against good faith transferees without notice of its existence where the only authority on the subject given the corporation by its charter or the general law was merely to prescribe and regulate the mode of transferring shares."

Shares of stock in a corporation do not constitute negotiable paper within the law merchant, but in some of the authorities such instruments are spoken of as possessing elements of quasi-negotiability, and the modern authorities generally lay down the rule that necessities of business require that shares of stock should be treated *prima facie* as evidence of unencumbered ownership of the holder thereof named in the certificate and upon the books of the company.

Judge Folger, speaking for the New York Court of Appeals in *Driscoll* v. *Mfg. Co., supra,* said:

"Shares of stock are in general personal property, to be dealt with as such, and with as much freedom and ease. The right to them is a chose in action, and though not transferrable, so as to give the same safety in dealing, as is given to a *bona fide* taker of negotiable paper, the current of authority in this State is to the protection of the *bona fide* vendee, against secret or equitable claims thereto of one who has indued the vendor with the *indicia* of ownership. It is evident that such a by-law as this in question, not made known upon the certificate of stock issued by the corporation, if it is to be upheld, is a very serious hindrance to the ease and safety with which sellers and buyers of shares of stock may deal therewith."

Mr. Justice Davis, speaking for the Supreme Court of the United States in the case of *Bank* v. *Lanier,* 11 Wall. 369, said:

"It is no less the interest of the shareholder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage."

Mr. Helliwell lays down the same doctrine as follows:

"Stock certificates are, at the present day, the basis of large commercial transactions throughout the world, and are bought and sold in open market with the same freedom which characterizes the transfer of promissory notes and other forms of securities. They are not, it is true, negotiable instruments; so far as practicable, however, they are held by the courts to possess the elements of negotiability. Under the corporate seal, the public is assured that the holder of a certificate is entitled to the number of shares stated therein, and that these shares are transferrable on the books of the corporation only in person or by attorney, and upon surrender of the certificate. This constitutes a representation on the part of the corporation that a purchaser of the certificate, upon presenting the same to the corporation, duly assigned, with power of attorney to transfer, may have the shares stated recorded in his name." Helliwell on Stock and Stockholders, p. 309.

The rule is unaffected by the fact in this case that the resolution giving a lien upon the stock, or, rather, the dividends, preceded the issuance of the stock and that the stock was issued pursuant to the resolution.

The resolution could not rise to a higher dignity than a by-law of the corporation. It was merely a contractual lien between the corporation and its shareholders, and all the reasons given for the requirement of notice to *bona fide* purchasers apply.

Appellees were *bona fide* purchasers for value without any notice of the bank's claim. There was nothing

upon the face of the shares of stock to give them notice and they were not, as we have already seen, chargeable with notice of the contents of the resolution adopted. They were entitled, as a matter of right, to have the stock transferred on the books of the company and new certificates therefor issued. The officers of the corporation had no legal right to refuse to make the transfer and issue new stock. Appellees had a complete remedy to compel the transfer or to recover damages from the corporation on account of such refusal to make the transfer. 2 Cook on Corporations, § § 389 *et seq.*

Since, as we have seen, appellees obtained a clear and unencumbered title to the stock by their purchase from appellant, with the right to compel the corporation to recognize the transfer, there was no breach of the implied warranty as to title. Appellees were not compelled to comply with the demands made by the officers of the corporation, and were volunteers in making payment of the sum demanded. The implied warranty was only against legally enforceable demands against the stock, and an enforceable demand, however just in morals, was not an encumbrance which constituted a breach of the warranty.

It follows that in no view of the case as presented by appellees have they any valid claim against appellant for damages, and the judgment is wholly without evidence to sustain it. The judgment is, therefore, reversed and the cause dismissed.