YOUNG COAL COMPANY *v.* HILL.

Opinion delivered March 23, 1914.

1. LEASES—ASSIGNMENT—INTENTION OF PARTIES.—A lease made to H., lessee, and providing that the words "trustee and lessee" in the lease should be construed to mean "successors, heirs, executors, administrators and assigns," shows an intention of the parties to make the lease assignable or transferable. (Page 183.)

2. SURETYSHIP—LEASE—ASSIGNMENT—LIABILITY OF SURETY.—Where a lease expressly provides that it may be assigned, a surety on the bond of the lessee remains liable after an assignment of the lease. (Page 184.)

3. SURETYSHIP—LEASE—FAILURE TO COMPLY WITH TERMS.—The failure of the lessee to make monthly settlements with the lessor as specified in the lease, will not relieve the surety on the lessee's bond from liability, where the lessor did not consent to the lessee's refusal to make the monthly settlements, but protested against the lessee's failure to make the payments. (Page 185.)

4. SURETYSHIP—BREACH OF CONTRACT—FORBEARANCE TO SUE—CONSIDERATION.—Where a lessee failed to perform the terms of the lease, a surety on a bond for the lessee's performance of the terms of the lease, is not released, where the lessor did not sue the lessee for his failure, in the absence of any consideration for the lessor's forbearance. (Page 185.)

5. STOCK—PLEDGE—STATUTORY LIEN.—Question of waiver of statutory lien on stock of a debtor, *held* a question for the jury. (Page 186.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

In April, 1906, D. J. Young, as trustee for himself and others, who constituted a partnership, entered into a contract with Jesse A. Harp, lessee, whereby Young, as trustee for the parties constituting the partnership named, leased to Jesse A. Harp, the lands described, for the purpose of permitting the said Harp to enter upon the same to mine coal therefrom. The contract provided that "the words 'trustee' and 'lessee,' as understood herein, shall be construed to mean successors, heirs, executors and assigns."

The contract further provided that, "in case the lessee neglects or refuses to comply with the terms and

provisions of this contract and make good all the losses of the trustee, after having thirty days' notice, he may, at the option of the trustee, be deemed to have forfeited all his rights under the lease.''

Under the terms of the lease, Harp, the lessee, was to pay all royalties due thereunder, and, in addition, to pay the trustee a royalty of eight cents a ton on all coal mined. The lease further provided that the lessee, Harp, should pay all royalties due for coal mined from the leased premises in any one month, on or before the 5th day of the succeeding month. There was a provision to the effect that no royalties should lap over more than one year.

The lease contract provided that the lessee ''shall make and execute a bond to the trustee herein in the sum of four thousand dollars, conditioned upon the faithful performance upon his part of the terms and conditions contained in this lease.'' The bond was executed by Jesse A. Harp, as principal, and R. J. Hill and T. D. Magness, as sureties, to D. J. Young, as trustee, in the sum of $4,000, for the faithful compliance on the part of Harp, the lessee, with the requirements of the contract of lease, which are referred to in, and expressly made a part of, the bond.

After the lease contract and bond were executed, the parties who constituted the partnership organized a corporation, known as the Young Coal Company, and the lease and bond were transferred by D. J. Young, as trustee, to this corporation.

The appellant brought this suit against Harp and the sureties on his bond, alleging the lease contract and the execution of the bond and the assignment of them to appellant, and setting up that Jesse A. Harp, on May 1, 1912, surrendered the lease to appellant, and that at that time there was a balance due on royalties amounting to $2,464.67, and praying judgment for said sum.

The defenses set up were that the lease contract and bond were not assignable, and that the contract of lease required the settlement of royalties for all coal mined during any month to be made by the 5th day of the succeed-

ing month, and that the appellant permitted the lessee Harp, without the knowledge or consent of the sureties, to discontinue and abandon the monthly settlements and payments of royalties, and that the monthly settlements, without the knowledge or consent of the sureties, were waived, thereby enabling the lessee to become greatly indebted to the appellant; that the appellant, without the knowledge or consent of the sureties, granted to the lessee Harp extensions of time in which to pay the royalties due; that the appellant encouraged and assisted the lessee Jesse A. Harp to transfer his stock in the appellant company to the Fort Smith Bank & Trust Company, and that at the time of such transfer, Harp was indebted to the appellant as alleged in the complaint; that the amount of money realized by the transfer of stock was largely in excess of the indebtedness then due from the lessee Jesse A. Harp to the appellant; that appellant failed and refused to enforce its lien on the stock of Jesse A. Harp, and made no effort to collect from said Harp the amount of his indebtedness to appellant.

After the testimony was adduced, the court directed a verdict in favor of the appellee, to which the appellant duly excepted.

Other facts stated in the opinion.

*Kimpel & Daily,* for appellant.

1.   The bond was assignable.   77 Ark. 130; Kirby's Dig., § 509.

2.   An extension of time to a principal will not release the surety unless it is for a valuable consideration. Part payment of a debt past due is no consideration.   34 Ark. 44; 32 Cyc. 196; 72 N. Y. 133.

3.   The pledge of the stock did not deprive appellant of its statutory lien.   60 Ark. 198.

*Holland & Holland* and *R. W. McFarlane,* for appellee.

1.   The transfer of the lease released the sureties. 32 Cyc. 84; Brandt on Sur. & Guar., § 462.

2. When the appellant acquiesced in the failure of Harp to make monthly settlements, it released the sureties. 65 Ark. 552; 74 *Id.* 603; 65 Minn. 321; 35 Ark. 463.

3. When appellant permitted Harp to transfer his stock, and failed to enforce its statutory lien, the sureties were released. Bigelow on Estoppel, § 185; 30 Ark. 453; 53 *Id.* 514; 55 *Id.* 112; 137 N. W. 496; 34 Ark. 80; 36 *Id.* 145.

WOOD, J., (after stating the facts). 1. Appellee contends that the lease contract was not assignable, and that the assignment of the lease to appellant released appellee from the obligations of his bond.

The lease contract provided that "the words *trustee* and *lessee* as used herein shall be construed to mean successors, heirs, executors, administrators and assigns." The use of these words by the parties to the contract clearly evinces an intention to make the contract transferable or assignable. The words "heirs, executors, administrators and assigns," would not have been used if the parties had not intended that the obligations of the contract would be binding upon the part of the lessee after same had been transferred or assigned. These words, by the terms of the contract, are made applicable alike to the lessee and to the trustee. There is nothing in the contract to indicate that the term *assigns* should have reference alone to the assignee of the lessee.

No question is raised as to the manner of the transfer. Appellee's only contention is that the lease contract was not transferable at all. In *White River L. & W. Ry. Co.* v. *Star R. & L. Co.,* 77 Ark. 130, a lease contract provided that the lessor lumber company should lease to the lessee railway company certain steel rails, etc., on condition that the lessee should pay $550 in quarterly payments. In default of the payments the lessee agreed, upon demand therefor by the lessor or its *assigns,* to deliver the property at a certain place. There was a bond binding the lessee to pay the rent and to return the property in accordance with the lease agreement. There was an assignment of the lease and bond, and we held that a contract and bond of that nature, under a written assign-

ment, regular on its face, could not be questioned. In that case, as in this, the parties to the contract indicated that it was the intention that the lease be assignable.

In the present case, the provisions of the bond which appellee Hill executed made the lease a part of the bond "as fully and completely as if the terms of said lease were set out fully" in the bond. The parties to the lease contract and the bond having expressly agreed that the lease should be assignable, it is unnecessary for us to decide as to whether a lease agreement of the kind under consideration would be assignable in the absence of language showing the intention of the parties to make it so, for, as we view the contract, that question does not arise.

2. Appellee next contends that the failure on the part of the appellant to require the payment of royalties on or before the 5th of each month as specified in the lease agreement released the surety. The uncontroverted evidence shows that the appellant never at any time agreed to relieve the lessee Harp from making monthly payments. When the royalties were due, Harp failed to make the payments as his lease contract required, and the testimony shows that they were constantly insisting on his making such payments. They never at any time agreed with him that the time for future payments should be extended or that he should not be required to make the payments at the time the contract required him to make them. The only extension of time ever granted to Harp was evidenced by a note for royalties that were past due, and that note was paid, and the amount called for by it is no part of the amount embraced in this suit.

The testimony on behalf of the appellant tended to show that Harp was never relieved from his obligation to make the monthly settlements as the contract required. It does show, however, that he failed to make these settlements, but such failure on his part without the consent and against the protest of the appellant could not relieve the appellee of his obligation under the terms of the bond.

As we view the undisputed evidence, there was no agreement upon the part of the appellant, the obligee, to

waive the monthly settlements that Harp, the obligor, agreed to make under his lease contract, and therefore the appellant did not change the contract in any particular. The most that could be said of the conduct of the appellant, under the undisputed evidence, was that it simply forebore to sue Harp from time to time on his past due indebtedness; but there was no consideration for such forbearance, and therefore the appellee was not released from the obligation to make good the violation of the contract on the part of his principal, Harp.

Appellee relies upon the case of *O'Neil* v. *Kelly,* 65 Ark. 552, and *Singer Mfg. Co.* v. *Boyette,* 74 Ark. 603. An examination of these cases will discover that the obligee and the obligor, or principal in the bond, altered the terms of the contract without the consent of the surety. No such condition exists here.

The appellee insists that the appellant should have declared the lease contract forfeited upon the failure of Harp to make the monthly payments as the contract required him to do, but the lease provided that "in case the lessee fails, neglects or refuses to comply with the provisions of the contract, he may, at the option of the lessor, be deemed to have forfeited all his rights under the lease." As the forfeiture of the lease was at the option of the appellant, the surety, having signed a bond which made that provision a part of it, can not be released from his obligation because of a failure on the part of the lessor to declare the lease contract forfeited. That was left, by the terms of the contract, to the option or discretion of the lessor. The failure of the lessor to declare a forfeiture and to bring suit for royalties that had accrued, and that were "allowed to lap over more than one year," were but forbearances for past due indebtedness, without consideration, not binding on appellant, and did not release the surety. *Thompson* v. *Robinson,* 34 Ark. 44. See, also, 32 Cyc. p. 196.

3. The testimony shows that Harp pledged his stock in the Young Coal Company to the Fort Smith Bank & Trust Company to secure a loan from the bank. The sec-

retary of the appellant knew that Harp was trying to negotiate this loan, and that he pledged his stock as collateral security. Harp's stock in appellant company, however, had never been transferred on the books of that company to the bank, and had never been surrendered by it. Harp paid off a note that he had executed to the appellant company for past due royalties immediately after pledging his stock to the Fort Smith Bank & Trust Company for the loan. Harp delivered his original certificate of stock to the president of the bank as collateral security for the loan which he obtained. Appellant, however, never transferred or delivered any of Harp's stock to the bank.

The appellee insists that there was a transfer of Harp's stock to the bank as collateral security for the loan, with the knowledge of appellant, which was a waiver by it of its statutory lien and released appellee from the obligations of his bond. We are of the opinion that the testimony is not sufficient for the court to declare as a matter of law that the appellant waived its statutory lien on the stock of Harp for the debt which he was due appellant. It was a question for the jury, under the evidence, as to whether or not appellant waived its statutory lien. Furthermore, the statute only gives a lien for debts due. Kirby's Digest, § 853; *Bankers Trust Co. of St. Louis* v. *McCloy,* 109 Ark. 160; 159 S. W. 205.

At the time Harp pledged the stock as collateral security, a considerable portion of the debt herein sued on was not due, and had not been earned.

The court therefore erred in directing the jury to return a verdict in favor of the appellee, and for this error, the judgment must be reversed and the cause remanded for a new trial.